# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

David Stebbins
Appellant(s),

vs.

Google LLC
Appellee(s).

9th Cir. Case No. 24-1936

District Court or
BAP Case No. 3:23-cv-00322-TLT

## APPELLANT'S INFORMAL OPENING BRIEF

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.  Timeliness of Appeal:

    a.  What is the date of the judgment or order that you want this court to review? **August 31, 2023**

    b.  Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no: **Yes**

        • If you did, on what date did you file the motion? **September 1, 2023**

        • For prisoners or detainees, what date did you give the motion to prison authorities for mailing? **n/a**

        • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment? **March 27, 2024**

    c.  What date did you file your notice of appeal? **March 29, 2024**

        • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing? **n/a**

9th Cir. Case No. **24-1936**                                    Page 2

**FACTS.** Include all facts that the court needs to know to decide your case.

2.    What are the facts of your case?

I filed this suit against Google LLC, alleging copyright infringement because an anonymous troll had used a frame from one of my videos as his channel icon while only minimally altering it. The Defendants moved to dismiss, alleging that the infringing icon was so obviously fair use that discovery was unnecessary, but all the while providing absolutely no evidence, whatsoever, to support their claims. They also sought to have me declared a vexatious litigant for no other reason than because they, personally, were annoyed by being sued by me.

I opposed the motion, pointing out their multiple failings to provide any evidence to back up their claims, and also pointing out that unclean hands should be a counter-defense to fair use in any event.

In a different case, another district judge granted in part my motion for reconsideration, re-opening that case and nullifying his previous judgment that one of my streams was not copyrightable. Upon nullifying that judgment, I then proceeded to file a Motion for Leave to File Amended Complaint in the instant case, seeking to add the infringement of that video to the lawsuit.

On August 31, 2023, the district court entered an order granting the motion to dismiss. In this order, the district court made the determination that the infringing icon was fair use, but made absolutely no effort to support her conclusions with specific findings of fact. All the factors were found to weigh in favor of the defendants solely because the judge said so.

The district court also declared me a vexatious litigant, but gave entirely new, neverbefore raised reasons for why she was doing it, reasons I had no prior notice of and therefore no opportunity to defend against. The district court also ordered, without giving me due process, to permanently delete files on my computer that were lawfully obtained.

The next day, I filed a motion to vacate judgment, pointing out that the court had failed to consider numerous properly-raised arguments, and pointing out the egregious due process violations that she had subjected me to.

Six months went by, and when the district court finally ruled on the motion, she summarily denied it while making precisely zero findings of fact. She never actually addressed the half a dozen issues that I pointed

This timely appeal ensued.

9th Cir. Case No. __24-1936__                                    Page 3

## PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP. In this section, we ask you about what happened before you filed your notice of appeal with this court.

3.  What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some other type of relief?

**I asked the District Court to award statutory damages as well as injunctive relief, ordering the Defendant to remove the infringing material, permanently terminate the direct infringer's accounts, and take reasonable steps to ensure that the direct infringer could not create any more accounts with YouTube in the future.**

4.  What legal claim or claims did you raise in the district court or at the BAP?

**Copyright infringement**

5.  **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.

**I am not incarcerated, so this question is not applicable.**

9th Cir. Case No. 24-1936 _____                                      Page 4

**PROCEEDINGS BEFORE THE COURT OF APPEALS.** In this section, we ask
you about issues related to this case before the court of appeals and any previous
cases you have had in this court.

6.    What issues are you asking the court to review in this case? What do you
      think the district court or the BAP did wrong?

**I ask the Court to review ...**

**1. The order granting motion to dismiss**
**2. The order declaring me a vexatious litigant**
**3. The order to permanently delete the computer files which I had lawfully obtained**
**4. The order denying my motion to vacate judgment and motion for leave to file motion for**
**reconsideration.**

## See the attached Supplemental Arguments for reasons why the
## Court should overturn the District Court's judgment.

7.    Did you present all issues listed in Question 6 to the district court or the BAP?
      Answer yes or no: yes _____

      If not, why not?

9th Cir. Case No. **24-1936**                                        Page 5

8.   What law supports these issues on appeal? (You may refer to cases and statutes, but you are not required to do so.)

**Rules & Statutes:**
28 USC § 1291
28 USC § 1915
CA Code of Civil Procedure § 391
CA Code of Civil Procedure § 527
CA Penal Code § 632
Fed.R.Civ.P. 41
Leval, P. (1990). Toward a Fair Use Standard. Harvard Law Review, 103(5), 1105. doi: 10.2307/1341457.

**Case Law:**
Andy Warhol Foundation Visual Arts v. Goldsmith, 143 S. Ct. 1258 (2023)
Bell v. Wilmott Storage Services, LLC, 12 F. 4th 1065 (9th Cir. 2021)
Bordenkircher v. Hayes, 434 US 357 (1978)
California Motor Transport Co. v. Trucking Unlimited, 404 US 508 (1972)
Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994)
Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074 (9th Cir. 1999):
Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies, 2021 WL 3721438 (9th Cir. Aug. 23, 2021)
Foman v. Davis, 371 US 178 (1962)
Fox v. Citicorp Credit Services, Inc., 15 F. 3d 1507 (9th Cir. 1994)
Galanti v. Nevada Dept. of Corrections, 65 F. 4th 1152 (9th Cir. 2023)
Google v. Oracle, 141 S.Ct. 1183 (2021)
Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985)
Kern v. TXO Production Corp., 738 F. 2d 968 (8th Cir. 1984)
Koerner v. Grigas, 328 F. 3d 1039 (9th Cir. 2003)
Lassiter v. Department of Social Services, 452 U.S. 18 (1981)
Lopez v. Vanderwater, 620 F. 2d 1229, 1233 (7th Cir. 1980)
Matter of Restaino, 10 N.Y.3d 577 (2008)
Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9th Cir. 2012)
New York Times Co. v. Sullivan, 376 U.S. 254 (1964)
Nissan Motor Co. v. Nissan Computer Corp., 180 F. Supp. 2d 1089 (C.D. Cal. 2002)
O.R. Securities v. Professional Planning Assoc., 857 F.2d 742 (11th Cir.1988)
Perry v. Sindermann, 408 US 593 (1972)
Peterman v. Republican National Committee, 320 F. Supp. 3d 1151 (MT 2018)
Purcell v. Gonzalez, 549 US 1 (2006)
Seuss v. Comicmix, , 983 F. 3d 443 (9th Cir. 2020)
Sony Corp. of America v. Universal City Studios, Inc., 464 US 417 (1984).
US v. Burrell, 622 F. 3d 961 (2010)
Willemijn Houdstermaatschappij v. Standard Micro., 103 F. 3d 9 (2nd Cir. 1997)

9th Cir. Case No. **24-1936**                                        Page 6

9. **Other Pending Cases.** Do you have any other cases pending in the court of appeals? If so, give the name and docket number of each case.

**Stebbins v. Polano - Case No. 23-15531**

10. **Previous Cases.** Have you filed any previous cases that the court of appeals has decided? If so, give the name and docket number of each case.

**None that I know of**

**David Stebbins**
_____
Name
**123 W. Ridge Ave.,**
_____
**APT   D**
_____
**Harrison, AR 72601**
Address

_____
Signature

7/20/2024
_____
Date

## SUPPLEMENTAL ARGUMENT

1.    This court has jurisdiction pursuant to 28 U.S.C. § 1291. "We review a decision on a motion to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. Pro se pleadings are construed liberally." See Galanti v. Nevada Dept. of Corrections, 65 F. 4th 1152, 1154 (9th Cir. 2023) (citations omitted).

2.    "An abuse of discretion... can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." See Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984).

3.    When a district court gives no explanation, or so little of an explanation as to be tantamount to no explanation, that is typically an automatic abuse of discretion to the exclusion of all other factors.

    (a)    See US v. Burrell, 622 F. 3d 961, 964 (2010) (citing Kern v. TXO[1]) ("We have held that a district court need not give 'lengthy explanations' ... but this does not permit a district court to give no explanation for its decision").

    (b)    See also Foman v. Davis, 371 US 178, 182 (1962) ("Of course, the grant or denial ... is within the discretion of the District Court, but outright refusal ... without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

    (c)    See also Willemijn Houdstermaatschappij v. Standard Micro., 103 F. 3d 9, 12 (2nd Cir. 1997) (citing O.R. Securities v. Professional Planning Assoc., 857 F.2d 742 (11th Cir.1988)) ("When the [tribunals] do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law").

---

1   The fact that this SCOTUS case cites the aforementioned 8th Circuit case of Kern v. TXO, while normally a trivial detail, is important here. US v. Burrell was a criminal case, which is normally a completely inapposite precedent in civil cases, except in a handful of specific cases (such as false arrest) where they inevitably *must* overlap. However, because this criminal case cited a civil case to support its precedent, it helps demonstrate that this requirement for a trial court to explain its rulings isn't limited just to criminal sentencing, but is a general law that encompasses all cases, all aspects of the law, and all stages of litigation, whatsoever.

(d)    See also Purcell v. Gonzalez, 549 US 1, 8 (2006) (reversing the preliminary injunction from the Court of Appeals primarily because "There has been no explanation given by the Court of Appeals showing the ruling and findings of the District Court to be incorrect").

## §1: Fair use

### §1A: Finding the icon to be transformative

4.    First, the District Court committed reversible error when she found the icon to be transformative. She based this finding on two specific things: First, that the inclusion of the two words "Acerthorn Laws" amounted to criticism, and second, that I did not address the Defendants' argument that the background had been changed.

5.    The second one is a bald-faced lie. I did in fact address that argument. Specifically, I addressed it in the Complaint, aka the very document that the motion to dismiss sought to toss out. Specifically, I said the following regarding the background:

> "What we are left with is a mish-mash of nebulous 'stuff' simply slap-ped onto my face. That is not good enough to be considered fair use. '[T]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative.'"
> See Dkt. 1, ¶ 40.

6.    In other words, the nebulous background changes do not count as transform-ative because they don't actually mean anything. To be considered transformative, a secondary use must lead to the creation of "new information, new aesthetics, new insights and understandings." See Andy Warhol Foundation Visual Arts v. Gold-smith, 143 S. Ct. 1258, 1282 (2023). Simply doing a pallette swap of the back-ground is not good enough. Just on this alone, the district court's judgment should be reversed, with the district judge being reprimanded for failing to consider the facts in the complaint to be true and in a light most favorable to the Plaintiff.

7.    The former grounds for finding that the icon is transformative is that the inclusion of the two words "Acerthorn Laws" amounted to criticism of me. This, however, fails due to the fact that the icon does not actually say anything about me. At best, the Defendants were able to speculate that it was a reference to my alleged

propensity for litigation. However, even if we assume that (and the defendants had not actually proven that), the icon in no way makes that clear. It seems the Defendants are pulling from their preconceived notions about what the icon's textual additions are *supposed* to mean. That is not how the fair use analysis is supposed to work. "[F]air use is an objective inquiry into what a user does with an original work, not an inquiry ... into the meaning or impression that an art critic or judge draws from a work." See Andy Warhol, supra at 1264. In order words, neither the Court nor the Defendant gets to just make up their own interpretation of the work.

8.      To help illustrate how weak the defendant's claim to transformative use was, I attached four hypothetical examples that took four well-known personalities (one fiction and three real-life people), simply slapped their name, followed by the word "laws" onto their images, and called it a day. See Dkt. 36-2. As I demonstrated in that exhibit, "the promise of copyright would be an empty one"[2] if it were that easy to get fair use.

9.      But even if the Defendants could ultimately prevail on this matter, it was still error for the district court to make that determination at the pleading stage without any factual development. When reviewing a motion to dismiss for failure to state a claim, the Court must accept all factual allegations in the Complaint as true and in a light most favorable to the Plaintiff. This means that the Court was required to accept that the additions to the icon were nontransformative, and then work from there. Because she clearly didn't do that, the judgment should be overturned.

### §1B: Finding the use to be noncommercial

10.      Next, the District Court erred when it found the use to be noncommercial, even though she explicitly stated that "it is unclear" whether the use was commercial, since there were no factual allegations in the complaint to suggest the use was commercial. In other words, she found that it was my responsibility to affirmatively allege facts in the complaint to disprove fair use, rather than the Defendants' burden to prove it.

11.      This goes against overwhelmingly well established precedent. First, the complaint is not required to address the issue of fair use at all. See Peterman v. Republican National Committee, 320 F. Supp. 3d 1151, 1157 (MT 2018) ("[I]t is not necessary to plead facts that disprove fair use to survive a Rule 12(b)(6) motion

---

2   See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 557 (1985).

to dismiss"). The fact that I offered to make a token argument for fair use in the Complaint in this case was a courtesy, not a requirement.

12.    Second, it is overwhelmingly well established precedent that defendant, not the plaintiff, bears the burden of proof on the issue of fair use. This Court has held, not only that "the burden of proving fair use is always on the putative infringer," but that this is one of the few "absolute statements" when it comes to fair use. See Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443, 459 (9th Cir. 2020). For the District Court to instead place the burden of proof on me is an egregious abuse of discretion and should be overturned forthwith.

### §1C: Finding the original work to be informational than creative

13.    Next, the district court abused her discretion by finding the second factor to weigh in favor of the defendant. "An abuse of discretion... can occur ... when a relevant factor that should have been given significant weight is not considered." See Kern, supra at 970. Here, the District Court took this standard to a new extreme; She gave the second factor of fair use virtually no consideration whatsoever. Her entire reasoning for finding the second factor to weigh in favor of fair use amounted to one single solitary sentence: "While Plaintiff presented his opinions in the livestream, the work is undoubtedly more informational than creative." That's it. That was her entire reasoning. The stream was "undoubtedly more informational than creative" because she said so.

14.    In making this arbitrary determination, the district court ignored completely every single argument that I presented to the Court for why the second factor should weigh against fair use, including ...

> "Opinions and commentary are, in and of themselves, creative, even if they discuss nonfiction events. See [Hughes v. Benjamin, 437 F. Supp. 3d 382, 393 (S.D. NY 2020)] ('Hughes's work is 'factual or informational' in that it provides a first-hand account of a newsworthy event, but it also has 'expressive or creative' value in both its commentary and production')" See Dkt. 36, ¶ 51.

> "it is the portion that ATTA copied, not the overall work, that should determine whether the second factor favors or opposes fair use... The Defendant insists that my discussions during that video were minimally creative. But even if that were the case ... that only really

helps the Defendant if that were the portion which ATTA actually copied. Instead, he copied a facial expression from that video. Moreover, it is obvious that he chose that frame, as opposed to any other of the countless frames in that video, primarily because of how _**expressive**_ that face was!" See Dkt. 36, ¶¶ 59-62.

15.     These arguments were entirely ignored by the district court. She did not pay even so much as lip service to them. "When the [tribunals] do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law." See also Willemijn, supra at 12. Because she gives next to no explanation whatsoever in support of her decision, she committed an abuse of discretion and so her judgment should be overturned.

### §1D: Finding that the direct infringer did not use the "heart" of the work

16.     Continuing with her pattern of giving virtually no explanations whatsoever in support of her findings, she then made the wholly arbitrary determination that the facial expression captured in the icon was not the "heart" of the work.

17.     The District Court's entire logic behind this finding is that "it is unreasonable to suggest that a single video frame represents the heart of a four-hour video of opinion about a video game." This is nothing more than an argument from incredulity. She makes no effort to explain how she came to this conclusion. She simply makes the entirely unsupported and entirely arbitrary finding that, for a multi-hour-long video, it is physically impossible for one frame to capture the heart.

18.     To be the "heart" of a work, all that is required is that it be the most iconic and memorable part of the work. That said, why can't a single frame represent the heart of a multi-hour-long work? I certainly see no reason why it can't. In fact, I'll do it right now:



Page 5 of 30

19.    That is the "most iconic and memorable part" (and, therefore, the "heart") of the 3-hour-long pay-per-view event from 1987 called "Wrestlemania III" perfectly encapsulated in only a single frame. Even though it is only a single frame, it still encapsulates the "most iconic and memorable part" of that show.

20.    That example isn't even an anomaly. I can easily do it again:



21.    Again, the most iconic and memorable part of the movie (and, therefore, the heart) is being captured in one single frame, and this time, it's a *facial expression* that constitutes the most iconic and memorable part of the work, making it especially applicable to the instant case.

22.    Clearly, it is not unreasonable to assume that the "most iconic and memorable part" of a work can possibly be encapsulated in a single frame. The only reason the District Court held otherwise is because she was unwilling to give me my day in court.

23.    In the instant case, the frame captured in the icon constitutes the "heart" of the work because the moment it captures – the moment where I give that highly expressive and smug facial expression – is the heart of the work. Me giving that facial expression is the most iconic and memorable part of the livestream, as evidenced by the fact that it is what most people have taken from that stream to make memes out of. Therefore, it is the "heart" of the work. It's as simple as that.

24.    That's not to say that every artistic work ever created can realistically have its heart fairly represented by a single frame. But as I just demonstrated, it isn't *inconceivable* that a single frame can fairly encapsulate the heart, either, like the District Court claims. Even if the facial expression in the instant case turns out not to be the heart, it was still reversible error for the District Court to make that determination *on a motion to dismiss*.

25.    Therefore, the District Court abused her discretion when she held that the third factor weighs in favor of fair use, and her judgment should be overturned.

Page 6 of 30

<u>§1E: Finding that the icon did not constitute a market substitute</u>

26.    Next, the District Court acted entirely arbitrarily in finding that the icon did not constitute a market substitute. Her findings were just as arbitrary and just as devoid of any actual findings of fact as the other three fair use factors. Here, the district court gives *two* sentences, instead of just one. Specifically, she writes ...

> "[I]t is not reasonable to suggest that the allegedly infringing icon has any significant effect on the copyrighted video. Moreover, Plaintiff does not appear to directly address Defendant's argument that 'there is no protectible[*] derivative market for criticism.'"
> See Dkt. 71, p. 13, lines 21-23.

27.    Both of these grounds are preposterous.

28.    The first of these two sentences is just as arbitrary as her findings in the other three factors. Neither the District Court nor the Defendants make even the slightest effort to prove that the icon is not a derivative market substitute. All they do is *say* that it does not infringe on my derivative markets. They *claim* it, but they don't *prove* it. It's not a derivative market substitute because it just isn't. This is another argument from incredulity and carries no evidenciary weight.

29.    This alone is grounds for reversal. See Monge v. Maya Magazines, Inc., 688 F. 3d 1164, 1181 (9th Cir. 2012) ("Maya does not offer any evidence of the relevant market or the lack of market harm from its publication other than broad, unsubstantiated statements in its brief"). I raised this argument – and this very case law – in my Opposition to Motion to Dismiss[3], but the District Court completely ignored that argument.

30.    As to the second sentence – where the District Court admonishes me because I "[did] not appear to directly address the Defendant's argument that 'there is no protectible[*] derivative market for criticism" - that logic is preposterous. The problem with this logic is that the argument the District Court cites was provided by the Defendant *in the reply brief*! It was found in Dkt. 41[4], not Dkt. 31. As such, it was reversible error for the District Court to consider that argument. See Fox v. Citicorp Credit Services, Inc., 15 F. 3d 1507, 1514 n. 6 (9t Cir. 1994) (Courts

---

\*    Spelling error was in original
3    See Dkt. 36, ¶ 72.
4    Page 2, line 22.

"should not consider [issues when the party] ... only raised it in the district court in its reply brief... such tardy presentation of an issue would raise serious questions of fairness because the non-moving party would have had no chance to respond to contentions raised initially in reply"). See also Koerner v. Grigas, 328 F. 3d 1039, 1048 (9th Cir. 2003) ("In general, we will not ordinarily consider matters ... that are not specifically and distinctly argued in appellant's opening brief").

31.     Even if the District Court may have had *discretion* to consider this new issue raised for the first time in the reply brief (which she shouldn't, for reasons stated above), keep in mind that the District Court did not grant the motion to dismiss because of the argument itself. She granted it because I "[did] not appear to directly address" this argument. Even if the consideration of the argument in the first instance was within the District Court's discretion (which it shouldn't be), it was still abuse of discretion for her to hold my failure to address the argument against me *when I literally couldn't address it even if I wanted to!* That alone justifies reversal.

32.     I addressed this issue in my Motion to Vacate Judgment[5], but the District Court completely ignored that argument.

### §1F: Unclean hands was wrongfully rejected as an exception to fair use

33.     Next, the District Court committed reversible error because it wrongfully found that the equitable doctrine of "unclean hands" was entirely irrelevant to the instant case, not just of minimal importance, but undeserving of any consideration whatsoever.

34.     For what it's worth, this is perhaps the most important issue to be litigated in this appeal. The implications of the Court's decision on this issue extend far beyond the facts of this particular case. An adverse ruling on this issue would effectively empower the most malicious people on earth to use copyright infringement to shield themselves from liability for blatant acts of harassment, doxxing, cyberstalking, and similar *malum in se* acts which are all already illegal to begin with, but when paired with copyright infringement (which is also illegal), the two acts, illegal on their own, suddenly cancel out the illegality of each other by proximity to one another. So the Court should tread lightly on this matter.

35.     The District Court has openly admitted that the direct infringer's objective with the icon or its corresponding YouTube channel was not to provide criticism or

---

5   See Dkt. 73, ¶¶ 67-70.

commentary about me, but simply to harass and dox me out of pure malice and spite.

    (a)    See Dkt. 71, Page 13, Lines 11-13 ("[T]he icon is part of a YouTube channel that is dedicated to 'harassing,' 'doxxing,' and 'impersonating' Plaintiff").

    (b)    See also Dkt. 71, p. 17, lines 5-6:

    "[I]t appears that the motive for Plaintiff's filing of the instant and similar lawsuits are to stop harassment from other users online. For example, Plaintiff's claim in this case is against Acerthorn the True Acerthorn, a YouTube channel allegedly set up to harass him").

36.    I don't even have to prove it because the Court has already found the facts in my favor. It is only the law, not the facts, which are in dispute. Even if the facts were disputed, as I've already explained, the District Court must accept them as being in my favor when deciding a motion to dismiss anyway, so they might as well be admitted to for purposes of the instant case.

37.    The District Court held that I "[do] not cite to authority to support his argument that[6]" harassment is a counter to fair use. This, however, is a bald-faced lie. I did indeed provide a legal basis for why harassment should never be considered fair use: The equitable doctrine of unclean hands.

38.    When passing the 1976 statute that is the current applicable Copyright Law, "The House Report expressly stated that the fair use doctrine is an 'equitable rule of reason.'" See Sony Corp. of America v. Universal City Studios, Inc., 464 US 417, 448 n. 31 (1984). "From this ... it would follow that unclean hands and all other equitable considerations are pertinent." See Leval, P. (1990). Toward a Fair Use Standard. Harvard Law Review, 103(5), 1105. doi: 10.2307/1341457.

39.    In that treatise, Leval would go onto admonish the judiciary for assuming that fair use is equitable, and explain how the history of fair use shows that it originated in law, not chancery. But guess what: That doesn't matter! Even if it was erroneous for the judiciary a century ago to slowly gravitate towards seeing fair use as an equitable rule, it doesn't matter what the courts of the 19th and early 20th centuries thought. As of the Copyright Act of 1976 (the current one), fair use's

---

6  See Dkt. 71, Page 11, Footnote #1

status as an equitable rule is, for better or worse, codified by Congress. Unless the law is being declared unconstitutional (which isn't happening here), courts do not have authority to simply nullify express acts of Congress simply because they disagree with the law. So whether you like it or not, fair use is equitable and that's all there is to it.

40.    And since fair use is now codified in law as being equitable, that means unclean hands is an exception to it. Period.

41.    This really isn't all that complex. Fair use is equitable. Period. Therefore, unclean hands is an exception to it. It's as simple as that. Why *wouldn't* unclean hands be an exception to it as long as it is otherwise classified as equitable? You have a better chance of making sense if you were to argue that fair use isn't or shouldn't be equitable in the first place than you would of making sense arguing that unclean hands still isn't an exception to it regardless of its equitable status, which is why the former is route Judge Leval took in his treatise. But at the end of the day, it ultimately doesn't matter, because as I've already shown, unclean hands is, for better or or worse, an equitable defense as of the 1976 statute, and only an Act of Congress can possibly change that. Therefore, unclean hands is an exception to it and there's no two ways about it.

42.    To counter my allegations of unclean hands, the Defendants cite to nothing more than unpublished, non-binding opinions.

(a)    Savage v. Council on American-Islamic Relations, Inc., 2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) is an unpub-lished district court opinion that doesn't even appear in the federal supplement, let alone is binding precedent in this circuit.

(b)    Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies, 2021 WL 3721438 (9th Cir. Aug. 23, 2021) is likewise unpublished (and, therefore, non-binding) and above all, does not even fully support the Defendants' position in the instant case. The excerpt they cite says "The Supreme Court has *minimized* the relevance of bad faith as part of the first factor," (emphasis added) but the District Court here held that bad faith is not relevant to fair use in any way, shape, or form, not just that it is of minimal relevance. According to the Defendants' own precedent, the level of bad faith still needs to be considered, yet the District Court refused to give it the consideration it was due.

(c)    Google v. Oracle, 141 S.Ct. 1183 (2021) is the one case cited by the Defendants on this issue that is actually published (and, therefore, has the potential to be binding precedent), but even then, the excerpt they cite[7] is mere dictum, as evidenced by the sentence that came immediately after the following sentence: "We have no occasion here to say whether good faith is as a general matter a helpful inquiry." See id at 1204. Therefore, even though the case law in general is binding, that one excerpt is not binding because it is only dictum.

43.    The District Court held that my "attempts to draw a distinction between the purpose of criticism and harassment" are "a matter of perspective[8]," in other words, that it's just my personal opinion that has no basis in reality. That finding, however, is just as blatantly false as her finding that I cite to no authority in support of my position when I very clearly cite to the doctrine of unclean hands. To suggest that there is no distinction between criticism and harassment is preposterous and ignores entire sections of the law that the District Court is sworn to uphold. The law already recognizes a clear distinction between criticism and harassment. Criticism is protected under the First Amendment, but harassment is a crime in every state, including California[9]. So the District Court says that I'm trying to draw a false distinction between between criticism and harassment? Well, I'm not the one making that distinction; that distinction has already been made.

44.    But even if unclean hands, generally, is not a counter-defense to fair use, the defendants' harassment *in this case* should still nullify their case for fair use, for one simple reason: To apply fair use in this case would be egregiously counter productive to the very public policy that fair use exists for in the first place. "The fair use doctrine thus permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 577 (1994). But in this case specifically, it is the defendants' and direct infringer's harassment, not a "rigid application of the copyright statute," which stifles creativity.

45.    Criticism is often considered quintessentially transformative. The Supreme Court has correctly acknowledged that the constitutional imperative surrounding copyright law – to "promote the progress of science and useful arts[10]" – is

---

7    "[c]opyright is not a privilege reserved for the well-behaved." See Dkt. 31, Page 20, Lines 15-16.
8    See Dkt. 71, Page 11, Footnote #1
9    See CA Code of Civil Procedure § 527.6(b)(3):"'Harassment' is... a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."
10  US Constitution, Article 1, Section 8, Clause 8

generally enriched by transformative content such as criticism and parody. See Campbell, supra at 579. I do not seek to challenge this long-established principle. But this just begs the question: Why? Why does criticism enrich the science and useful arts? How exactly does it do that?

46.    The answer to that question is obvious if you think about it for even a few minutes: When art is criticized, its strengths and weaknesses are typically brought into focus. Although the work in question cannot be changed, since it is already published, all subsequent works of art can use the feedback from the previous works and incorporate that feedback into their designs, hopefully maximizing the strengths and minimizing the weaknesses of what came before it. Once finished, this new work will, itself, become subject to similar criticism and scrutiny, which future creators can take to heart when designing their future creations. Ideally, this "cycle of feedback" – assuming that both artists and reviewers alike participate in the cycle in good faith – should result in art becoming better and higher quality over time. This long-term benefit to the creative arts is certainly worth a short-term bruising of individual artists' egos.

47.    That, however, also paints a perfect image as to why harassment should not be considered "transformative." Whereas criticism, when done correctly, aims to improve art over time, harassment does not have that same benefit. Rather than "promoting" the science and useful arts, harassment actively suppresses it. The whole point of copyright, and the legal monopolies created by it, is to entice artists to create by luring them in with the opportunity to profit from their creations, but harassment actively undermines the incentives to create by discouraging would-be creators from getting into the fields they'd otherwise be interested in.

48.    Many would-be harassers insist that artists "have to learn to take criticism," otherwise they simply are not cut out for the creative fields. However, there is a big difference between professional reviewers, in highly-edited and proofread reviews, published in newspapers, periodicals, and/or TV shows, pointing out a movie's shortcomings and flaws, and using specific examples from the movie to illustrate their criticisms, versus a bunch of untrained, undisciplined virgins in their parents' basements with nothing but a smartphone, an extreme sense of self entitlement, and precisely zero critical thinking skills launching vile, toxic, vulgar, line-crossing invectives designed solely to inflict pain towards anyone they don't like simply because they can. The latter is not the least bit conducive to the overall goals of promoting the science and useful arts.

49.    In order for criticism to fulfill its legally-recognized role of promoting the science and useful arts, the feedback in question has to be specific, tangible, and actionable. It has to be something that creators can actually use in future works in order to guide and direct said works. Alleged "criticisms" such as calling me deranged, saying that I'm the reason why there are warnings on bleach not to drink it, or other vulgar insults, do not in any way, shape, or form help to improve art over time. Even relatively polite disagreements with my opinions still do not have this quality about them if they amount to little more than simply disagreeing with my opinion while offering nothing more. Such feedback, even if given relatively politely, fails to "add value" to the original, and therefore is not transformative.

50.    To be clear, I am not advocating that copyright law does, or should, create a positive right for creators to be absolutely free from any/all deterrence from entering the creative fields. For example, artists are not entitled to government subsidies should their art fail to turn a profit, so the threat of poverty and starvation may serve as a valid deterrent to those who may otherwise pursue artistic endeavors that may require they quit their day job in order to pursue, such as acting or professional wrestling. Also, the threat of being disowned by one's family is certainly a valid and lawful deterrent to entering morally controversial creative fields such as pornography. But that does not mean that plaintiffs and courts are obliged to suffer in silence when wholly malicious people like the direct infringer in this case are going out of their way to engage in conduct that is *already illegal to begin with*[11], in order to actively create more deterrents than those which already occur naturally.

51.    The Defendants disagree with this argument. I understand that. They probably believe that even harassment should be considered fair use because, in their opinion, it is just as much "codified by Congress" as fair use's status as an equitable rule, as I explained above. From this assumption, it would follow that they would have the right to take a similar attitude towards me as the one I took in ¶¶ 39-41 above. But that assumption is dependent on an extremely narrow-minded, extremely self-entitled, and extremely inaccurate interpretation of how fair use actually works. The overwhelming legislative and judicial history of fair use utterly crushes the defendants' beliefs that this is how fair use works "whether I like it or not."

52.    Put simply, criticism is quintessentially transformative, not because "it just is," but because, when done right, it contributes to the cycle of feedback that improves art over time. By contrast, harassment is not transformative, not because "it

---

11  Again, harassment is already a standalone crime.

Page 13 of 30

just isn't," but because it actively sabotages and actively suppresses the science and arts through antagonism, aggression, and bullying while offering nothing of value in return. And there is no good reason for the Court to hold otherwise.

53.    For this reason alone, the Court should hold that the direct infringer's harassment *in this case* negates the Defense's claim to fair use, even if it declines to take that stance generally.

54.    Free speech would not be chilled if the Court were to adopt a policy in my favor on this issue. Even political speech – which typically occupies the absolute highest rung of First Amendment protection – is limited whenever people knowingly and maliciously publish false statements about government officers out of pure malice and spite. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964). Those who are exercising their right to fair use in good faith would not be significantly deterred from further exercise of their rights just because of this precedent. The only ones who would be chilled are those (like the direct infringer in this case) who believe "fair use" means that the mere addition of only a few words of original content provides total immunity from copyright law to the exclusion of all other factors. But aside from those extremely few (and extremely delusional) people, nobody in their right mind would look at a precedent stating that infringement done purely out of a desire to harass the target rather than criticize his work is not fair use, and think that would chill good faith criticism.

55.    For sure, courts should be weary of borderline cases. They must be cautious to avoid labeling well-intended criticism as harassment simply due to less than ideal execution of said criticism. But where, as here, it is extraordinarily clear (to the point where even the Defendant and District Court admit to it) that the direct infringer has no ambition beyond simply inflicting as much pain on me as humanly possible, entirely for its own sake, there is no risk of a chilling effect.

56.    For all of these reasons and more, this Court should overturn the District Court's decision that bad faith, malicious harassment, done solely to inflict pain for its own sake, is entirely irrelevant to a fair use determination, and remand for further proceedings.

## §2: Denying leave to amend the complaint

57.    Assuming the Court, notwithstanding all of the sections above, believes that the District Court properly found fair use in the complaint, the District Court still

abused its discretion by denying me leave to amend the complaint.

58.     Just like with her finding of fair use, the District Court gave next to no findings of fact whatsoever in support of her decision to deny lave to amend. See Foman v. Davis, 371 US 178 (1962) is controlling, which states in pertinent part:

> "Rule 15 (a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason ... the leave sought should, as the rules require, be freely given. Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."
> See id at 182 (citations and quotations omitted)

59.     Here, the only tangible grounds the District Court gave for denying leave to amend was "Plaintiff has been dilatory in seeking this amendment" and "Briefing for Defendant's motion to dismiss, as well as the multiple other motions discussed in this Order, has completed. If Defendant is given leave to amend, the motion practice would simply restart, with resources thus spent wasted." Both of these are without merit and should be overturned.

60.     For the second of these two grounds, we must remember that, if that were enough to justify denying leave to file an amended complaint, no amended complaints could ever be filed. A good portion of amended complaints will typically be ordered even after the judge has already granted a motion to dismiss, let alone the plaintiff files a leave motion. If this were enough to defeat a motion for leave to file amended complaint, it would be applicable in nearly every case.

61.     For the first one, the District Court bases its finding of dilation on the basis that I misunderstood the order from Judge White that precluded me from bringing it. She believes that order only addressed the presumption of copyright validity under 17 USC § 410(c), but did not find the underlying livestreams (one of which I sought to bring as a claim in the proposed amended complaint) to be lacking in

copyright protection.

62.     However, this is blatantly false, and in fact, the District Court even provides the excerpt where Judge White states that the streams do not have minimal creativity: "Plaintiff does not allege facts that permit the Court to assess whether the content is eligible for copyright protection... such as creativity or originality." See Dkt. 71, Page 4, Lines 4-8.

63.     Considering that same order that Judge Thompson is referencing resulted in a dismissal with prejudice, that means that it created res judicata. That means the judgment applies, going forward, to all copyrighted works that were relevant to that case. Therefore, it applied to the stream that I sought to include in the Amended Complaint in the instant case. This means that I had an excuse for not seeking leave to file the amended complaint earlier, because I had to wait until Judge White had reversed that order, otherwise it would have been barred by res judicata. Therefore, the District Court erred when it declared my motion for leave to file to be dilatory.

64.     The only other grounds offered is just as arbitrary and just as devoid of factual findings as her findings regarding fair use: "the Court finds that under the allegations pled, there are no additional allegations that can remedy Plaintiff's claim." See Dkt. 71, pp. 13-14. Of course, she gives precisely no details as to how she reached that conclusion, and therefore, she committed an automatic abuse of discretion pursuant to the well-established precedent mentioned in ¶ 3 above.

65.     Therefore, the judgment of the district court should be reversed.

### §3: Evidence of blatant judicial vindictiveness

66.     Of course, the District Court gave one extra grounds for denying my Motion for Leave to File Amended Complaint. But it not only constitutes reversible error and an abuse of discretion, but is even proof of blatant judicial vindictiveness.

67.     Specifically, the District Court says "Plaintiff's motion is indicative of 'blatant gamesmanship'" and "This situation is similar to another case in which Plaintiff is involved, where Plaintiff voluntarily dismissed a defendant in order to moot that party's pending motion to dismiss. As the court there noted, 'the Court does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship.'" See Dkt. 71, Page 4, lines 18-25.

68.    In other words, Judge Thompson, by her own admission, holds a grudge against me for having issued that voluntary dismissal that fateful day. She speculates (without proof) as to my motives for issuing the voluntary dismissal, and by her own admission, her grudge against and desire to punish me for having issued it plays a role in her discretionary actions in this case.

69.    This is proven *by the judge's own admission!*

70.    "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." See Bordenkircher v. Hayes, 434 US 357, 363 (1978). Also, "This Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests... For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to produce a result which it could not command directly." See Perry v. Sindermann, 408 US 593, 597 (1972).

71.    Here, we once again have a judge openly admitting, in writing, to holding a grudge against me because of me issuing that voluntary dismissal. Bear in mind that, unlike all the harassment, doxxing, and other *malum in se* actions the direct infringers have subjected me to over the past few years, I was well within my legal rights to issue that voluntary dismissal, as evidenced by the fact that Judge White begrudgingly agreed to give the dismissal effect in the very same order that Judge Thompson references. At least with the direct infringers, their actions (which they frivolously attempt to pass off as fair use criticism) are crimes in and of themselves. But with the voluntary dismissal I issued, we don't even have that much.

72.    If this and Judge White's actions are allowed to remain, it would create a massive chilling effect on other plaintiffs to severely discourage them from exercising their rights under Fed.R.Civ.P. 41 when they feel it is in their best interests to do so. It doesn't matter if what you did was legal. It doesn't matter if you had the "absolute right[12]" to do what you did. As long as the judge, personally,

---

12  See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1077-80 (9th Cir. 1999) ("a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed. It is well settled that under Rule 41(a)(1)(i), a

doesn't like what you did, (s)he will find some way to make your life a living hell for as long as (s)he can get away with in order to punish you for having done it.

73.     This is a flagrant abuse of judicial power by these two district judges and it needs to be stamped out forthwith. What's next? A judge issuing adverse rulings against you because you demanded to go to trial instead of taking a plea bargain? Or perhaps because you voted for the candidate for public office that the judge didn't endorse? Or because you successfully moved to suppress evidence because it was obtained in violation of your Fourth Amendment rights? Those are the floodgates this Court would be opening if it allowed Judges Thompson and White to continue to hold this grudge against me for having issued that voluntary dismissal and factor that grudge into their decisions.

74.     Therefore, I ask the Court to not only overturn the District Court's decision, but to reprimand the judge and warn her not to use her decision-making power in my cases going forward to punish me for my perfectly legal behavior.

### §4: Recording the 26(f) conference

<u>§4A: Finding that I had violated the law by recording a 26(f) conference with the defense counsel, without the defense counsel's knowledge or consent, when both I and the defense counsel were in one-party consent states</u>

75.     Moving onto the collateral matters, the District Court next committed reversible error when it found that I had committed a legal violation when I had recorded the 26(f) conference I had with the defense counsel. The District Court used the case of Nissan Motor Co. v. Nissan Computer Corp., 180 F. Supp. 2d 1089 (C.D. Cal. 2002) to support its finding that it was illegal for me to record the conference without the defense counsel's consent.

76.     However, that case actually explicitly goes against the District Court's findings. That case does not create a stand-alone, blanket prohibition of recording attorneys' phone calls. In fact, the Court in that case goes out of his way to make clear the complete opposite:

---

plaintiff has an ***absolute right*** to voluntarily dismiss his action… There is nothing the defendant can do to fan the ashes of that action into life… and may not be extinguished or circumscribed by adversary or court… the defendant can't complain, and the district court lacks jurisdiction to do anything about it… the whole point of a Rule 41(a)(1) dismissal is to give the plaintiff an '***absolute***' way out") (emphasis added).

Page 18 of 30

"The American Bar Association Standing Committee on Ethics and Professional Responsibility recently issued a Formal Opinion which stated that a lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation ***does not necessarily violate the Model Rules of Professional Conduct***. The Committee advised that a lawyer may not, however, record conversations in violation of the law in a jurisdiction that forbids such conduct without the consent of all parties, nor falsely represent that a conversation is not being recorded." See id at 1096 (emphasis added).

77.    In other words, it only becomes illegal if, like in Nissan, the one recording the call is in an all-party consent state. Yes, California is an all-party consent state, but this recording wasn't subject to the laws of the State of California. As I thoroughly demonstrated throughout Dkts. 73, 76, and 82, I live in Arkansas and the defense attorney was based in New York. Both of those states are one-party consent states, meaning that, as long as just one party (me) knows about and consents to the recording, it does not matter if everyone else consents or not.

78.    In fact, not only does that mean it was legal, but it also means that the District Court (for the Northern District of California) did not even have personal jurisdiction to adjudicate that matter in the first instance! Because it occurred outside California, that means it can only be subject to California jurisdiction if it was pursuant to a California proceeding. However, (A) the very case law that the Court relied on – Nissan v. Nissan – explicitly stated that a phone call *is not* pursuant to a judicial proceeding simply because it occurs between two attorneys representing opposite sides of a civil litigation[13], and (B) even if that were the case, then, by the Nissan court's own admission[14], the recording would then be exempt from the law because of a statutory exemption for judicial proceedings. See CA Penal Code § 632(d) ("'[C]onfidential communication' ... excludes a communic-ation made ... in any legislative, judicial, executive, or administrative proceeding").

79.    So either the conversation being recorded was pursuant to an official proceeding, in which case, the recording was legal, or it was not pursuant to an official proceeding, which means there is nothing tying the conversation (or

---

13 See id at 1096 ("There is also no authority for the proposition that private conversations between counsel are part of a 'judicial proceeding' and the Court declines to adopt this overly broad and unsupported interpretation of the phrase 'judicial proceeding'").

14 In fact, the Nissan court expressly justified its finding on the fact that the recording *wasn't* part of an official proceeding in order to find that the statutory exemption does not apply.

recording of same) to California in any way, shape, or form, meaning the district court lacked personal jurisdiction to judge the propriety of the recording. Either way, the District Court's order was erroneous and should be overturned.

80.    Throughout my motions for reconsideration and to vacate judgment, neither the defendants nor the district court made even a token attempt to address the arguments I made as to why the order should be overturned. Even in this appeal, the defendants did not even so much as pay lip service to my arguments regarding this issue in their Response to my Motion for Summary Reversal. The Defendants' complete silence on this issue just proves that they know there is nothing they can possibly say in response to this order.

81.    Therefore, the Court should overturn this order and re-enable me to record phone calls as long as they are legal under the applicable state laws.

§4B: Denying me due process when finding I broke the law by recording the calls.

82.    Of course, it was reversible error for the district court to even do that in the first place. As I thoroughly demonstrated in Dkts. 73, 76, and 82, I was well within my legal rights to record that call, with or without the defense counsel's knowledge or consent. But there is another reason her order should be overturned, a reason that calls into question her very fitness to serve as a federal judge in the first instance: I was not afforded even an iota of due process before that order was entered.

83.    As I explain in Dkt. 82, ¶¶ 15-21, the appropriate course of conduct, in the event the Court was alarmed at my behavior, would be to enter an order to show cause and give me an opportunity to explain my side of the story *before* ordering me to do anything else. That is the absolute bare minimum due process. Even Judge Thompson admits to as much in the very same order. See Dkt. 17, Page 14, Lines 18-25.

84.    But in this instance, the District Court never did that. She never issued any order to show cause why I should not be made to permanently delete the recordings, but instead just cut straight to ordering me to do so without even giving me *even one day* to show cause why I should not be made to do so.

85.    The fact that the Court did not do so in this case, but instead proceeded to summarily impose legal obligations on me with no hearing or due process of any kind, is an egregious violation of my constitutional rights and should be overturned

forthwith. Not only that, but Judge Thompson needs to be brought up for review to determine if she is even qualified to serve as a judge in the first instance, if she is capable of due process violations as egregious as this. Similar abuses of judicial power have resulted in those judges being removed from office. See Lopez v. Vanderwater, 620 F. 2d 1229, 1233 (7th Cir. 1980) ("As a result of the Lopez incident [where Judge Vanderwater summarily declared Lopez guilty of a crime when he never had any opportunity to enter a plea or present any evidence in his defense], Vanderwater was removed from office by the Illinois Courts Commission"). See also Matter of Restaino, 10 N.Y.3d 577 (2008), where a New York judge was removed from office after he summarily had 46 citizens arrested despite possessing absolutely no evidence that any of them had breached courtroom etiquette (and in at least one of those 46 instances, knowing full well that the individual in question was innocent[15]), simply because he wanted to and was in a bad mood. Such sanctions should be imposed against Judge Thompson in this case.

## §5: Declaring me a vexatious litigant

### §5A: After only two recent cases were terminated in my disfavor in this district

86.    Next, the district court abused its discretion when it imposed the nuclear sanction of declaring me a vexatious litigant after only two cases. It could have been three, but in between me filing this case and Judge Thompson ruling on it, one of my cases (Stebbins v. Rebolo) was re-opened.

87.    In their response to the motion for summary reversal, the defendants argue that it was not two cases, but eight, because they are incorporating all the previous cases I had filed in my home state. In making this argument, they appear to concede that, if it were in fact just two cases, that it would indeed be premature to declare me a vexatious litigant.

88.    However, it is prejudicial and unfair to include cases from years and years ago that otherwise have no bearing on the instant case, especially when, by the District Court's own admission, the instant case is not independently frivolous.

---

15  See id at 582-83 ("When the device rang at the back of the courtroom, a defendant was standing before petitioner at a podium prepared to issue his status report. Petitioner queried whether defendant knew who owned the device, to which defendant responded, 'No. I was up here.' Without equivocation and consideration of the proper legal bases for doing so—and _notwithstanding his knowledge that defendant ... did not own or otherwise possess the device_—petitioner revoked defendant's recognizance") (emphasis added).

89.    Bear in mind that a similar legal doctrine – that of the "copyright troll" – is typically only affixed to litigants in the most extreme cases. For example, in the fairly recent case of Bell v. Wilmott Storage Services, LLC, 12 F. 4th 1065 (9th Cir. 2021), concurring justices Clifton and Wardlaw expressed concern that Mr. Bell (the plaintiff in that case) might be a copyright troll, but that was only because that Mr. Bell had filed *more than one hundred* lawsuits over the infringement of that copyrighted photograph in the Central District of California alone, and over 200 such actions nationwide. See id at 1082. Obviously, the number of lawsuits I have filed isn't even close to that number, even after taking into account my nationwide lawsuits.

90.    Further justifying the label of "copyright troll" was the fact that Mr. Bell's infringement claims "are based on a copyright that may not belong to Plaintiff." See id at 1082. This is a factor that is clearly absent in the instant case. Even the Appellees admit in the instant case that I have a copyright to the underlying livestream debate that is valid and enforceable in the first instance. See Dkt. 41, Page 11, line 28 through Page 12, line 1 ("That does not mean [the stream] has so little creativity that it is not copyrightable at all").

   §5B: Years-old cases from another district should not have been admissible.

91.    The Defendants appear to argue that, simply because this filing restriction was imposed on me in a completely different district, over a decade ago, that automatically means it should apply to me in every district, period. That, however, has no basis in the law. The certainly do not *cite to any authority* stating that a filing restriction in one district necessarily carries over to other districts necessarily.

92.    If, in fact, a filing restriction in any district necessarily carries over to every other district in the nation, then that raises significant constitutional questions. First, can the restriction truly be considered "narrowly tailored" at that point? Even the District Court admits that this is an essential element to these sanctions. But can it truly be considered narrowly tailored if it necessarily extends beyond its initial district?

93.    Second, if such a declaration does in fact have such nationwide and lifetime effects, then I should have received a lot more due process than what I actually got all those years ago. According to the District Court in this case, simply providing me with one single solitary opportunity to submit a written brief arguing why those sanctions should not be imposed is all the due process I'm entitled to. See Dkt. 71,

Page 22 of 30

Page 16, Lines 18-25. Maybe, if the only restrictions were confined to the district in which the cases were filed, that might be the case. But if being so declared in one district, even many years ago, automatically and necessarily carries over to all other districts, then the stakes are far too high for that to be enough due process.

94.    In such a case, not only should I be entitled to the benefit of discovery (albeit limited in scope to the instant issue) and a full-blown hearing, but I should even be entitled to appointment of counsel in such a case. In civil cases, the right to appointment of counsel is governed by the case of Lassiter v. Department of Social Services, 452 U.S. 18 (1981), which holds that there is a presumptive right to appointment of counsel in civil cases when the indigent civil litigant stands to lose his personal liberty. In that case, it was a loss of parental rights, which would only have lasted for a maximum of 18 years in any event (owing to the common sense fact that the child will eventually come of age, which would terminate the parent's rights regardless). So if a parental termination proceeding is enough of a personal liberty to justify appointment of counsel in civil cases, then a ***nationwide, lifetime restriction on my First Amendment right to court access***[16] will almost certainly be a sufficient liberty to trigger the Lassiter precedent. Even restraining orders – which are typically only granted after the accused has been proven guilty of physically assaulting or otherwise terrorizing the petitioner – typically only last a few years before having to be renewed for good cause shown!

95.    If, however, this Court disagrees with the Defendants' and District Court's logic entirely, and insists that a declaration from another district does not, in fact, automatically lead to a declaration in every other district, then we revert back to my original point on appeal: that the District Court declared me a vexatious litigant after only two cases were lost by me, which (as the Defendants concede to, for reasons I explained in ¶ 87 above) isn't enough to justify such a nuclear restriction on my First Amendment rights.

96.    Therefore, the District Court's judgment should be reversed.

§5C: Declaring me a vexatious litigant on grounds that were never before the court in the first place

97.    This section rivals §4B above in terms of errors so egregious they call into question Judge Thompson's very fitness to serve.

---

16  See California Motor Transport Co. v. Trucking Unlimited, 404 US 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition").

98.     Imagine for a minute a hypothetical scenario where a malicious judge in a criminal case is determined to find a specific, disliked citizen guilty by any means necessary. The prosecuting attorney brings some charges. Let's say the Defendant is accused of "remaining outside after curfew," just as a theoretical example. The Defendant answers those charges by providing irrefutable proof that he was, in fact, in his home after curfew went into effect (e.g. timestamped computer logs from his desktop computer, which isn't portable, that only he could have made). The judge throws out the initial charges (because he must), but rather than let the defendant go, he instead finds the defendant guilty of the never-before-mentioned crime of jaywalking, a crime that the defendant was never informed of and did not get even one minute to argue against.

99.     If such a case were to ever appear on this Court's appellate docket, the Court would not only issue a sharply-worded judgment overturning the trial court's verdict, but would even contemplate finding the trial judge to be guilty of corruption and misconduct, the provisions of 28 USC § 352(b)(1)(A)(ii) be damned. Well, that is what we have here.

100.     The Defendants initially put forth two grounds to declare me a vexatious litigant: (1) I had already been declared a vexatious litigant in the past, and (2) the instant case was brought solely out of a desire to silence online criticism about me.

101.     The former grounds has already been debunked, for reasons I explain in §§5A & 5B of this Brief. The latter of these two grounds was wholly unfounded, and the Defendants were unable to provide even an iota of evidence in support of this outlandish claim. In all instances, the defense fails to provide even so much as a scintilla of evidence to support these outrageous accusations. In every instance, they simply make the accusation and leave it at that. They don't even try to back up their claims with anything remotely resembling proof.

102.     In fact, if you actually stop to think about the implications of this accusation, it makes absolutely no sense. The Defendant is not saying that I'm silencing criticism in the process of protecting my valid legal rights (aka the Doctrine of Double Effect[17]), nor are they accusing me of seeking to silence criticism as well as protect my copyright and/or stop harassment. They are accusing me of acting with the sole, exclusive motive of silencing criticism, and absolutely nothing else. Silencing

---

17 Originally coined by philosopher Thomas Aquinas, the Doctrine of Double Effect means there sometimes are unfortunate consequences that we simply cannot avoid if we are to obtain the result we truly desire. See https://youtube.com/clip/Ugkxou7wY2dlbXQeTSn0WvIFfZnUg7MLZjjy for one example of this.

criticism is not simply 0.1% or 99.9% of my agenda, but literally 100% of it. Also bear in mind that both the Defendants and the District Court freely admit that I am being harassed and doxxed by numerous individuals. I don't even have to prove those things because the Defendants admit they are true.

103.   So when the Defendants say that I am merely attempting to silence criticism, what they're actually saying is ... I don't actually care about any of that. All the harassment, all of the doxxing, and all of the copyright infringement that isn't fair use[18], would all be water under the bridge, from my point of view, as long as the criticism, and *only the criticism*, was not part of it.

104.   When you think about it that way, the Defendants' latter ground for declaring me a vexatious litigant quickly becomes ludicrous on its face.

105.   When I thoroughly crushed those two grounds for declaring me vexatious, the District Court then proceeded to make up an entirely new, never-before-mentioned grounds for declaring me vexatious: The number of motions I had filed in my lifetime across these eight cases.

106.   The District Court found that "Plaintiff's conduct in filing hundreds of motions that have little merit in this and other satisfies this factor." Bear in mind that she said "hundreds of motions," as in ... hundreds with an S. That means at least 200 motions. That alone is hard to believe, but not only that, but she said that all of these motions (all "hundreds with an S" of them) were "of little merit."

107.   Of course, she never lays out all 200+ of these motions (because she can't; she just pulled that finding out of her backside and she knows it). She lists the eight cases I have filed (see Dkt. 71, pages 15-16), but not the 200+ motions. Bear in mind that, across eight cases, that constitutes an average of 25 motions per case, but that average goes up when you realize that some of them were dismissed on a § 1915(e) review, so I never had the chance to file *any* motions in those cases. In fact, if I recall correctly, at least five of those cases were dismissed on a § 1915(e) review, so of the remaining three cases, there would have to be an average of 67 motions per case, which is absolutely ludicrous. The District Court should not be allowed to make such an astronomical claim without proof. The Court should be required to lay out each and every motion I had filed, just to prove that they meet the hefty qualification of "hundreds with an S."

---

18  And just to remind the Court: Both the Appellee and the District Court AFFIRMATIVELY ADMIT that all of this is happening to me!

108.   But the District Court's job doesn't end there. Remember that she also found that the motions were "of little merit." It's preposterous to assume that there is some lifetime limit of the number of *meritorious* motions I'm allowed to file.

109.   To justify this finding, once she has listed out every motion, she then needs to cross out every motion that wasn't frivolous. This means crossing out ...

(a)   every motion where the relief I sought was granted in whole or in part[19]. After all, if I prevail on a motion, that is an automatic bar to it being frivolous, just like how prevailing on an entire case is an automatic bar to malicious prosecution. Also ...

(b)   every motion that was only denied as moot because some subsequent action rendered the motion moot. Examples include, but are not limited to, the multiple Petitions for Writ of Mandamus I had filed with the 8th Circuit Court of Appeals that were only denied because, after filing them, the district court finally brought the underlying cases current, or the fairly recent "Emergency Motion for Expedited Consideration and Stay of Proceedings" in my latest West Virginia lawsuit, which was only denied because, while that motion was in transit to the courthouse, Judge Tinsley had already issued, of his own accord, the exact stay I was already going to request[20]; and also ...

(c)   every motion where I had a valid, reasonable, and nonfrivolous grounds for believing that I was entitled to the relief I sought. This might be the hardest one to spot, but it nonetheless needs to be considered.

110.   If, after removing all motions that fit any of those criteria, there are *still* at least 200 motions that remain, then and only then could the District Court truly justify its exceptional finding that I had filed "hundreds with an S" motions that were "of little merit."

111.   Of course, even barring all of that, none of this matters in the first instance, and the reason why was telegraphed in the title and first four paragraphs of this section: Because as ridiculous as this finding was, it was never even put before the Court as a suggested grounds for declaring me vexatious in the first place. The

---

19  And yes, that includes Dkt. 130 in the case of Stebbins v. Polano, whether the district court likes it or not. That motion was ultimately granted, and so Judge White's and Thompson's personal animosity towards me for having issued it doesn't matter, for reasons I've already explained in § 3 of this Brief.

20  See Case 2:24-cv-00140 (Stebbins v. Moon) in the Southern District of West Virginia, Dkts. 12-15.

Appellees paid lip service and passing reference to the motions, but they never argued that I should be declared a vexatious litigant in this district because of them.

112.   This means that, even if the Court were to systematically go through my entire nationwide litigation history, one motion at a time (like picking individual grains of rice out of a bowl) in the manner described above, it ultimately doesn't matter, because I was never notified and given an opportunity to argue my case against that grounds. Therefore, the first and most essential element of due process of law – even under the "minimal due process" theory that the District Court adopted (let alone the heightened due process I argued for in §5B above) – was utterly lacking here, just as lacking as it was in §4B above.

113.   For all of these reasons and more, the judgment of the district court be overturned and Judge Thompson should be investigated for fitness to serve.

### §5D: The filing restrictions are not narrowly tailored to the abuse they are allegedly a response to.

114.   Further evidence that the Defendants and district court were just seeking to punish me for seeking to invoke my legal rights is the fact that the imposed sanctions do not have anything at all to do with the actual finding of vexatiousness.

115.   The District Court correctly cited that any sanctions must be "narrowly tailored" to address the abuses found. But here, the sanctions were anything but narrowly tailored. In fact, the sanctions imposed were a complete non-sequitur from the alleged abuses found (which there weren't any to begin with, for reasons I described above).

116.   The grounds for finding me a vexatious litigant were ... *apparently* ... the fact that I had filed "hundreds" (with an S) motions that were "of little merit." The sanction she imposed, however, was for me to have to submit any new complaints (not motions, but complaints) to a duty judge, but only if those motions are either (A) related to copyright, or (B) list Google as a defendant. Once the complaints are filed, however, I am then free to file however many motions (with an S) I want in those cases.

117.   Not only is this sanction not "narrowly tailored" to curb the alleged abuse (something which even the district court admits is required), but it is so far removed from the abuse it allegedly seeks to curb that it only serves as further

proof that the district judge had already made up her mind to declare me vexatious and only sought to justify it after the fact.

118.    Think about it this way: Imagine if there was a married couple, and the wife was jealous that her husband routinely went to strip clubs, as she saw that as tantamount to adultery. She also wants her husband to stop working overtime as it cuts into the time he could be spending with his wife and children. Unable to persuade her husband to stop doing either of these things, she petitions the local court for a restraining order, forcing her husband to stop going to the strip clubs. The judge – faced with the irrefutable truth that the husband has broken no laws – decides to make the finding, entirely out of nowhere and with no due process for the husband, that the husband was physically abusive towards his wife, something that wasn't even part of the original petition. Then, in order to deter further domestic violence, he orders the husband to stop going to strip clubs and stop working more than 40 hours per week, but *doesn't* order the husband to move out of the house, doesn't order the husband to stay a certain distance away from the wife, and doesn't even grant a divorce! The judge literally imposes regulations on nearly all aspects of the marriage *except* the aspects that he actually found to be illegal!

119.    That is effectively what we have here. The district judge had already decided she wanted to restrict my ability to file future lawsuits, for no other reason than because she just wanted to. However, because I had definitively refuted the grounds that the Defendants were advocating for, the district judge came up with an entirely new grounds for declaring me vexatious that hadn't been previously raised, and then proceeded to issue the very restrictions she had already decided she wanted to issue, even though these restrictions had nothing at all to do with the actual findings she made. She is literally restricting my right to court access in all areas *except* for the one area she actually found to be abusive!

120.    This is only further proof that the district judge had prejudged the case, and should be sanctioned accordingly. Also, the judgment of the district court should be overturned forthwith.

### §6: Denying motion for leave to file a motion for reconsideration and motion to vacate judgment.

121.    Finally, the District Court abused its discretion when it denied both my motion to vacate judgment, as well as my motion for leave to file motion for reconsideration.

## §6A: Denial of Motion for Leave to File Motion for Reconsideration

122.   First, the District Court denied the motion to vacate judgment on the grounds that it was filed after final judgment was entered. This is a lie. She issued a per curiam opinion, but not a final judgment. A final judgment form can be found at the URL of https://www.uscourts.gov/sites/default/files/ao450.pdf. No such judgment was entered in that case.

123.   By contrast, the cases of Stebbins v. Polano[21] and Stebbins v. Rebolo[22] did have a final judgments entered in them. I managed to file a motions for leave to file motion for reconsideration just a few hours before the final judgments got filed, so they were technically properly before the court.

124.   But even if the per curiam opinion technically counts as a final judgment, it clearly doesn't preclude the district court from considering it on the merits, as evidenced by the fact that, in the case of Stebbins v. Rebolo, district judge Jeffrey White did, in fact, grant that motion in part and give me leave to file a Second Amended Complaint. See Dkt. 30 in that case. Even if Judge Thompson still saw fit to deny the motion on its merits, it was still reversible error for her to deny it for the reasons she gave.

## §6B: Denial of Motion to Vacate Judgment

125.   Next, the District Court denied the motion to vacate judgment. Unlike the motion for leave to file motion for reconsideration, the district court at least barely took up the merits of this motion. However, the district court's reasoning for denying the motion is just as threadbare and just as lacking in any logic or findings of fact as the rest of her orders. Her explanation as to why she is denying the motion consists of only a single paragraph:

> "We find that Plaintiff's arguments are unpersuasive, do not address the legal standards set forth above, and ... they did not point to factual or legal mistakes that were inadvertent or surprising under the appropriate legal standards. Plus, there was no excusable neglect."
> See Dkt. 87, Page 4, Lines 13-23.

126.   That's it. That's literally all she had to say. Her entire case for denying the

---

21  Case 4:21-cv-04184-JSW
22  Case 4:22-cv-00546-JSW

motion was "I'm not wrong because I say so." I can't refute anything, not because her logic is airtight, but because *there is no logic!*

127.   This is automatically an abuse of discretion for the reasons I explained in ¶ 3 above: When the district court gives no explanation for its decision, that is an automatic abuse of discretion.

### §7: Conclusion

128.   In conclusion, it is clear that the trial court simply didn't care about my rights. She made the determination that I didn't deserve court access based on extra judicial considerations first, and then came up with the most threadbare of arguments to retroactively justify the decisions she had already come to. The fact at no point does she make any attempt to justify her conclusions with any actual findings of fact beyond "because I say so" is proof of this. This is further evidenced by the fact that, on multiple occasions, she passed judgment against me without giving me even nominal due process, proving that she was determined to rule against me no matter what. From her warped point of view, giving me due process would just be a waste of time because her mind was already made up.

129.   Wherefore, premises considered, I respectfully pray that the judgment be overturned, costs incurred be awarded, and for any other relief to which I may be entitled.

So requested on this, the 20th day of July, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)
123 W. Ridge Ave., APT D
Harrison, AR 72601
870-204-6516
acerthorn@yahoo.com