**24-1936**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

◆◆

MR. DAVID ANTHONY STEBBINS,

*Plaintiff-Appellant,*

—v.—

GOOGLE LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 3:23-CV-00322-TLT, HON. TRINA L. THOMPSON

## BRIEF FOR DEFENDANT-APPELLEE

JEREMY P. AUSTER
WILSON SONSINI GOODRICH
   & ROSATI, P.C.
1301 Avenue of the Americas,
   40th Floor
New York, New York 10019
(212) 999-5800
jauster@wsgr.com

JULIA HU
WILSON SONSINI GOODRICH
   & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, California 90013
(323) 210-2900
julia.hu@wsgr.com

*Attorneys for Defendant-Appellee*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Defendant-Appellee Google LLC states as follows:

- Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet Inc., a publicly traded company. No publicly traded company holds more than 10% of Alphabet, Inc.'s stock.

Date: September 23, 2024    WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


 /s/ *Jeremy P. Auster*
   Jeremy P. Auster

*Attorneys for Defendant-Appellee Google LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................4

STATEMENT OF THE CASE.................................................................4

I.     The Parties ..................................................................................4

II.    Plaintiff's History of Abusing the Judicial System ........................5

     A.    Plaintiff Is a Vexatious Litigant with a History of Filing Frivolous Lawsuits and Appeals and Wasting Judicial Resources...........................................................................5

     B.    Plaintiff Has Recently Filed a Barrage of Meritless Copyright Claims in the Northern District of California to Silence His Critics ................................................7

III.   Plaintiff's Instant Lawsuit Against Google Is Yet Another Frivolous Attempt to Silence Fair-Use Criticism ..........................................10

     A.    Alleged Infringement of Plaintiff's Livestream Video .......................10

     B.    Plaintiff Files a Barrage of Improper Motions to Forestall Dismissal of His Frivolous Suit ..........................................14

     C.    The District Court Dismisses Plaintiff's Complaint with Prejudice and Declares Him a Vexatious Litigant ...............................16

     D.    The District Court Denies Plaintiff's Post-Judgment Motions...........16

SUMMARY OF ARGUMENT ...............................................................17

STANDARDS OF REVIEW ..................................................................19

ARGUMENT ........................................................................................19

I.     The Channel Icon Is a Fair Use of Plaintiff's Livestream............................19

     A.    The Use of the Modified Image as a Channel Icon Is Transformative .................................................................21

1.     The Channel Icon's Purpose Is Transformative Criticism And Commentary ..............................................22

2.     The Channel Icon's Use Is Non-Commercial ..........................28

B.     The Livestream Is Far from the Core of Copyright ...........................29

1.     The Livestream Is Informational, Not Creative ........................30

2.     The Livestream Is Published ......................................31

C.     The Channel Icon Uses a *De Minimis* Portion of the Livestream .......32

D.     The Channel Icon Does Not Affect Any Market for the Livestream ..............................................34

1.     The Channel Icon Does Not Affect Any Protectable Derivative Market for the Livestream .....................................35

2.     The Channel Icon Does Not Affect Any Existing Market for the Livestream ..................................................37

II.     The District Court Did Not Abuse Its Discretion in Issuing a Vexatious Litigant Screening Order .......................................39

A.     Plaintiff Had Notice and Was Heard ..................................40

B.     The District Court Compiled an Adequate Record for Review ..........41

C.     The Screening Order Is Supported by Substantive Findings as to the Frivolous and Harassing Nature of Plaintiff's Litigation .........42

D.     The Screening Order Is Narrowly Tailored ........................47

1.     The Screening Order Appropriately Protects Google and Its Affiliates.................................................48

2.     The Rest of the Screening Order Is Narrowly Tailored to Plaintiff's Misconduct...........................................49

III.     The District Court Did Not Abuse Its Discretion in Denying Leave to Amend....................................................51

A.     Plaintiff Sought Amendment in Bad Faith........................52

ii

B.      Plaintiff Unduly Delayed in Seeking Amendment ............................55

C.      The Belated Amendment Would Have Prejudiced Google ................57

IV.     Plaintiff Offers No Other Grounds for Reversal ...........................................58

CONCLUSION ..........................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers,*
  781 F.2d 1393 (9th Cir. 1986) .......................................................55

*Allen v. City of Beverly Hills,*
  911 F.2d 367 (9th Cir. 1990) .........................................................51

*Ames v. Pac. W. Fin.,*
  937 F.2d 611 (9th Cir. 1991) .........................................................59

*Andy Warhol v. Goldsmith,*
  598 U.S. 508 (2023)................................................................*passim*

*Apple Inc. v. Corellium, Inc.,*
  2023 WL 3295671 (11th Cir. May 8, 2023)....................................36

*Atel Fin. Corp. v. Quaker Coal Co.,*
  321 F.3d 924 (9th Cir. 2003) .........................................................35

*Baker v. Firstcom Music,*
  2021 WL 6424520 (C.D. Cal. Nov. 2, 2021) ...........................47, 49

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
  448 F.3d 605 (2d Cir. 2006) ..........................................................36

*Block v. Wash. State Bar Ass'n,*
  860 F. App'x 508 (9th Cir. 2021)...................................................42

*Brunson v. Cook,*
  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023)............................32

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994)..............................................20, 22, 26, 37

*City of Inglewood v. Teixeira,*
  2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) ......................*passim*

*Dermendziev v. Washington,*
  624 F. App'x 454 (9th Cir. 2015)...................................................54

*Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies,*
  2021 WL 3721438 (9th Cir. Aug. 23, 2021) ..................................28

*Dixon v. NPG Music Publ'g, LLC,*
  2017 WL 2469352 (C.D. Cal. June 6, 2017)..................................45

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,*
  890 F.2d 165 (9th Cir. 1989)..........................................................27

iv

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
   2022 WL 16962285 (C.D. Cal. Aug. 2, 2022) .....................................*passim*

*Dream Games of Arizona, Inc. v. PC Onsite*,
   561 F.3d 983 (9th Cir. 2009) ........................................................................27

*Drevaleva v. McDonough*,
   2022 WL 15173728 (N.D. Cal. Oct. 26, 2022),
   *aff'd*, 2024 WL 1342669 (9th Cir. Mar. 29, 2024)...................................43, 49

*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986) ..................................................................34, 38

*Franklin v. Murphy*,
   745 F.2d 1221 (9th Cir. 1984) .....................................................................51

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021).................................................................................*passim*

*Greenspan v. Qazi*,
   2021 WL 2577526 (N.D. Cal. June 23, 2021).............................................24

*Hannley v. Mann*,
   2023 WL 3407183 (C.D. Cal. Mar. 8, 2023) .........................................23, 27

*Hughes v. Benjamin*,
   437 F. Supp. 3d 382 (S.D.N.Y. 2020) ....................................................*passim*

*Hustler Mag., Inc. v. Falwell*,
   485 U.S. 46 (1988)........................................................................................27

*Hustler Mag. Inc. v. Moral Majority Inc.*,
   796 F.2d 1148 (9th Cir. 1986) .........................................................22, 29, 30

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) .......................................................................51

*Kamal v. Eden Creamery, LLC*,
   88 F.4th 1268 (9th Cir. 2023) ......................................................................56

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) .......................................................................31

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*,
   452 U.S. 18 (1981)........................................................................................41

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ...........................................................19, 20, 39

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .....................................................................54

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ................................................................*passim*

*Mazer v. Stein*,
    347 U.S. 201 (1954)................................................................29

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ...............................................19

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .............................................21

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) ...................................*passim*

*Moy v. United States*,
    906 F.2d 467 (9th Cir. 1990) .........................................48, 49

*Pasatiempo by Pasatiempo v. Aizawa*,
    103 F.3d 796 (9th Cir. 1996) ...............................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .............................................25

*Ringgold-Lockhart v. Cnty. of Los Angeles*,
    761 F.3d 1057 (9th Cir. 2014) .............................................43

*Rodriguez v. Cook*,
    169 F.3d 1176 (9th Cir. 1999) .............................................50

*Safir v. U.S. Lines, Inc.*,
    792 F.2d 19 (2d Cir. 1986) ..................................................45

*Santos v. Kimmel*,
    --- F. Supp. 3d ---, 2024 WL 3862149
    (S.D.N.Y. Aug. 19, 2024).......................................21, 24, 25, 26

*Savage v. Council on American-Islamic Relations, Inc.*,
    2008 WL 2951281 (N.D. Cal. July 25, 2008) ............27, 30, 37, 38

*Schafler v. HSBC Bank USA*,
    310 F. App'x 181 (9th Cir. 2009)........................................42

*Scott v. Weinberg*,
    2007 WL 963990 (W.D. Wash. Mar. 26, 2007)........................50

*Sedgwick Claims Mgmt. Servs. v. Delsman*,
    2009 WL 2157573 (N.D. Cal. July 16, 2009) ..................20, 24, 30

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ........................................32, 36

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ..............................29, 30, 33, 34

*Sony Comput. Ent't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) .............................................33

*Stebbins v. Bradford*,
    2013 WL 3366289 (W.D. Ark. July 5, 2013),
    *aff'd*, 552 F. App'x 606 (8th Cir. 2014) ...................................................5, 44

*Stebbins v. Doe d/b/a Creetosis*,
    No. 4:24-mc-80179-HSG (N.D. Cal. filed June 21, 2024) ..........................48

*Stebbins v. Doe d/b/a Sidalpha*,
    No. 3:23-cv-00321-MMC (N.D. Cal. filed Jan. 20, 2023).......................9, 10

*Stebbins v. Doe, et al.*,
    No. 24-4992 (9th Cir. Aug. 14, 2024) ..........................................................49

*Stebbins v. Garcia Baz*,
    No. 3:24-cv-00398-LJC (N.D. Cal. filed Jan. 10, 2024) ................................9

*Stebbins v. Google, Inc.*,
    2011 WL 5150879 (N.D. Cal. Oct. 27, 2011) .................................1, 5, 44, 48

*Stebbins v. Hixson*,
    2018 WL 2124106 (W.D. Ark. May 8, 2018) ..............................................44

*Stebbins v. Jones*,
    No. 3:22-cv-04082-AGT (N.D. Cal. filed July 11, 2022) ..............................9

*Stebbins v. Jones*,
    No. 8:24-cv-01486-JVS-KES (C.D. Cal. transferred
    July 8, 2024) ...................................................................................................6

*Stebbins v. Legal Aid of Arkansas*,
    512 F. App'x 662 (8th Cir. 2013)....................................................................1

*Stebbins v. Microsoft, Inc.*,
    2012 WL 12896360 (W.D. Wash. Jan. 13, 2012),
    *aff'd*, 520 F. App'x 589 (9th Cir. 2013) ...........................................1, 2, 5, 44

*Stebbins v. Polano*,
    No. 21-cv-04184-JSW, 2022 WL 2668371 (N.D. Cal.
    July 11, 2022) ........................................................................................*passim*

*Stebbins v. Polano*,
    No. 23-15531 (9th Cir. Aug. 28, 2024) .................................................*passim*

*Stebbins v. Rebolo*,
    No. 22-cv-546-JSW, 2022 WL 2668372 (N.D. Cal. July 11,
    2022), *vacated in part on reconsideration*, 2023 WL 2699982
    (N.D. Cal. Mar. 28, 2023)......................................................................*passim*

*Stebbins v. Stebbins*,
    2013 WL 6182991 (W.D. Ark. Nov. 26, 2013) ...........................5, 6, 46, 50

*Stebbins v. Stebbins*,
    575 F. App'x 705 (8th Cir. 2014).........................................................*passim*

*Stebbins v. Texas*,
    2011 WL 6130403 (N.D. Tex. Oct. 24, 2011),
    *report and recommendation adopted*, 2011 WL 6130411 (N.D.
    Tex. Dec. 9, 2011) ......................................................................5, 43

*Stebbins v. USDC-CAOAK*,
    No. 22-70132 (9th Cir. July 12, 2022) ..........................................10

*Stebbins v. USDC-CAOAK*,
    No. 22-70269 (9th Cir. Jan. 26, 2023)............................................10

*Stebbins v. USDC-CASJ*,
    No. 11-72595 (9th Cir. Nov. 15, 2011) ..........................................10

*Steinmeyer v. Lab'y Corp. of Am. Holdings*,
    2023 WL 2994115 (S.D. Cal. Apr. 17, 2023) ...............................58

*Strojnik v. Driftwood Hosp. Mgmt., LLC*,
    2022 WL 1642234 (9th Cir. May 24, 2022).................................52

*Suffrard v. Oakmont of Mariner Point, LLC*,
    2018 WL 11471573 (N.D. Cal. Dec. 20, 2018) ...........................57

*Taylor v. City & Cnty. of San Francisco*,
    2023 WL 3477836 (9th Cir. May 16, 2023)................................56

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020) ...........................................32, 35, 36

*Vitrano v. United States*,
    721 F.3d 802 (7th Cir. 2013) ........................................................54

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................19

## STATUTES

17 U.S.C. § 101 ..............................................................................31

17 U.S.C. § 107 ........................................................................*passim*

17 U.S.C. § 411(a) ........................................................................55

28 U.S.C. § 1651(a) ......................................................................39

28 U.S.C. § 1915 ..................................................................6, 9, 50

## RULES

Fed. R. Civ. P. 12(b)(6)..................................................................20

Fed. R. Civ. P. 15(a).......................................................................51

Fed. R. Civ. P. 60(b) ................................................16, 17, 58, 59

N.D. Cal. Local Civ. Rule 7-9 ...................................................................59

## MISCELLANEOUS

4 *Nimmer on Copyright* § 13.05[A][4] ......................................28, 35, 36

*Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) § 1906.1 ...............................................................................31

## **INTRODUCTION**

Plaintiff David Stebbins is a twice-declared vexatious litigant with a more than decade-long history of filing frivolous lawsuits and appeals across the country. This case is one of many baseless copyright lawsuits that Plaintiff has filed in the Northern District of California in an effort to silence fair-use criticism of him online. The district court correctly dismissed Plaintiff's sole infringement claim against Google because the allegedly infringing image at issue is a fair use of Plaintiff's copyrighted video. The court also appropriately exercised its discretion to declare Plaintiff a vexatious litigant as a sanction for his unceasing, years-long abuse of the court system, and to deny him leave to amend his complaint.

Plaintiff's 40-plus federal lawsuits have ranged from claims that "his parents, improperly listed him as a dependent on their tax returns," *Stebbins v. Stebbins*, 575 F. App'x 705, 705 (8th Cir. 2014), to claims against a legal aid service for refusing to assist him in lawsuits, *Stebbins v. Legal Aid of Arkansas*, 512 F. App'x 662 (8th Cir. 2013), to "arbitration" claims against Microsoft for "$1.5 trillion," *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd*, 520 F. App'x 589 (9th Cir. 2013), and a petition to "confirm an arbitration award" against Google "in the amount of $500,000,000,000.00," *Stebbins v. Google, Inc.*, 2011 WL 5150879, at *1 (N.D. Cal. Oct. 27, 2011). These suits follow a similar pattern. In each case, Plaintiff is granted *in forma pauperis* status, allowing him to avoid filing

1

fees.  In each case, Plaintiff burdens the court and the defendants with irregular and prolix filings, repeatedly flouting the federal and local rules of civil procedure.  And in each case, Plaintiff's claims are invariably dismissed as frivolous.  As one court noted in dismissing one of Plaintiff's lawsuits, "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly."  *Microsoft*, 2012 WL 12896360, at *1.

In recent years, Plaintiff has focused on the Northern District of California, favoring it for a campaign of frivolous copyright infringement lawsuits aimed at silencing fair-use criticism.  Plaintiff posts on YouTube footage and commentary of himself playing video games and registers the videos with the Copyright Office.  Plaintiff's recent suits allege that other YouTube users infringe his copyrights whenever they post videos and other content on YouTube that draw on Plaintiff's gameplay videos for the purpose of commentary and criticism.  Plaintiff demands YouTube remove these unflattering videos, voicing some specious infringement claim.  If YouTube refuses, he sues YouTube and/or its parent company, Google.

In the case giving rise to this appeal, a third-party YouTube user created a channel devoted to criticizing Plaintiff and posted a small image of Plaintiff's face as an icon for the channel.  Plaintiff sued Google, claiming that the picture is a split-second snapshot from a four-hour livestream video that he registered with the

2

Copyright Office.  Plaintiff alleged that Google was secondarily liable for the user's supposed infringement and sought an injunction compelling Google to ban the user who criticized him.

The obvious flaw in Plaintiff's case is that the use of a single frame from his video is not copyright infringement.  It is unquestionably a "fair use" under the four-factor test set forth in Section 107 of the Copyright Act: (1) the sole purpose of the image is to criticize and comment on Plaintiff's behavior, a transformative use safeguarded by law; (2) the allegedly infringed video is of minimal creativity; (3) the image consists of a single, modified frame of the four-hour video; and (4) the use of that screenshot has no impact whatsoever on the market for Plaintiff's video or any protectable derivatives, assuming there were such markets at all.  The district court correctly recognized this and dismissed without leave to amend.

The district court also joined the Western District of Arkansas, affirmed by the Eighth Circuit, in declaring Plaintiff a vexatious litigant.  The court imposed a pre-filing screening order for the Northern District of California applicable to any future lawsuits against Google and its affiliates, any future copyright claims, and any lawsuits in which Plaintiff seeks to proceed *in forma pauperis*.  That declaration came after Plaintiff had been warned for *years* by courts in the Northern District that he would be declared vexatious if his misconduct persisted.

The district court's decisions should be affirmed.

3

## ISSUES PRESENTED FOR REVIEW

Plaintiff purports to raise a slew of issues for review, but those issues fundamentally boil down to just three:

(1) Whether the district court correctly determined that the image at issue is a non-infringing fair use of Plaintiff's copyrighted video;

(2) Whether the district court abused its discretion in designating Plaintiff a vexatious litigant and entering a pre-filing screening order; and

(3) Whether the district court abused its discretion in denying Plaintiff's motion for leave to amend his complaint.

## STATEMENT OF THE CASE

### I.    The Parties

Google LLC operates YouTube, an online platform that allows users to upload and share videos, and view, interact with, and comment on videos posted by other users.

Plaintiff, a self-proclaimed "Youtuber," goes by the online alias "Acerthorn." (3-SER-318   ¶   1.)   His   YouTube   channel   (available   at: https://www.youtube.com/@Acerthorn)   includes   videos   depicting   gameplay footage of video games, with Plaintiff providing voice-over review and analysis of the games.

## II.    Plaintiff's History of Abusing the Judicial System

This case is just one of the dozens of frivolous lawsuits that Plaintiff has filed in the last fifteen years.  His abuse of the judicial system is extensively documented.

### A. Plaintiff Is a Vexatious Litigant with a History of Filing Frivolous Lawsuits and Appeals and Wasting Judicial Resources

Plaintiff has filed over 40 federal lawsuits dating back as far as 2011.  (3-SER-283 & n.11.)  He is generally granted *in forma pauperis* status, allowing him to avoid thousands of dollars in filing fees to pursue claims that courts across the country have consistently dismissed as "clearly baseless," "frivolous," and based on "indisputably meritless legal theor[ies]."  *Stebbins v. Google, Inc.*, 2011 WL 5150879, at *3-4 (N.D. Cal. Oct. 27, 2011); *accord Stebbins v. Texas*, 2011 WL 6130403, at *3 (N.D. Tex. Oct. 24, 2011), *report and recommendation adopted*, 2011 WL 6130411 (N.D. Tex. Dec. 9, 2011) ("frivolous claims" based on "fantastic or delusional scenarios"); *Stebbins v. Bradford*, 2013 WL 3366289, at *2 (W.D. Ark. July 5, 2013), *aff'd*, 552 F. App'x 606 (8th Cir. 2014) ("patently frivolous" claims based "entirely on [Plaintiff's] suspicions and theories"); *Stebbins v. Microsoft*, 2012 WL 12896360, at *1 ("frivolous lawsuit … wildly untethered from any valid interpretation of" law).

Plaintiff's "extensive experience in filing lawsuits has equipped him with some knowledge of the law, and his skills in drafting are often sufficient" to avoid dismissal under *in forma pauperis* screening standards.  *Stebbins v. Stebbins*, 2013

5

WL 6182991, at *1 n.1 (W.D. Ark. Nov. 26, 2013); *see* 28 U.S.C. § 1915(e)(2)(B).

Courts ultimately catch up, recognizing Plaintiff's "abuse of the permission granted

to him to proceed as a pauper in good faith under 28 U.S.C. § 1915(d)." *Stebbins v.*

*Stebbins*, 2013 WL 6182991, at *1.  But by the time his cases are dismissed, Plaintiff

has typically had ample opportunity to "abuse[] the system" with as many as "over

one hundred" meritless motions that drain "countless hours of time and judicial

resources." *Id.*  Plaintiff has also been admonished for harassing behavior towards

court staff and opposing litigants.  *See, e.g.*, *id.* at *3; *Stebbins v. Jones*, No. 8:24-

cv-01486-JVS-KES (C.D. Cal. transferred July 8, 2024), Dkt. 92 at 7 (admonishing

Plaintiff for "[s]ending emails with profanity, mean-spirited names, and accusations

of 'gotcha' violat[i]ons and threats").

In 2013, Plaintiff's home district, the Western District of Arkansas, declared

him a "vexatious" litigant and imposed pre-filing restrictions.  *Stebbins v. Stebbins*,

2013 WL 6182991, at *1.  The Eighth Circuit affirmed, noting that as of 2014

"Stebbins ha[d] proceeded in forma pauperis on at least sixteen complaints that

proved meritless." *Stebbins v. Stebbins*, 575 F. App'x at 705.  That number has

grown considerably since.

6

### B. Plaintiff Has Recently Filed a Barrage of Meritless Copyright Claims in the Northern District of California to Silence His Critics

After he was declared vexatious in Arkansas, Plaintiff transferred his misuse of the legal system to the Northern District of California.

***Stebbins v. Polano***.  In June 2021, Plaintiff, proceeding IFP, sued Google's parent company, Alphabet Inc., alleging that YouTube users ridiculed him by posting purportedly infringing copies of an "accidental livestream" video in which Plaintiff's computer camera recorded and broadcast him online without his knowledge.  *Stebbins v. Polano*, No. 21-cv-04184-JSW, 2022 WL 2668371, at *1, *5 (N.D. Cal. July 11, 2022) ("*Polano*").  Plaintiff found this video embarrassing and sought to invoke copyright law to compel the users and YouTube to remove it.  First, Plaintiff applied to register the accidental livestream with the Copyright Office as a "dramatic work," *without* disclosing that it was created due to a software glitch without any creativity on his part—a requirement for copyrightability.  *Id.* at *4.  After obtaining the requisite registration, Plaintiff sued Alphabet, demanding over a million dollars and a permanent ban of the YouTube users.  *See Polano*, Dkts. 1, 55.

The district court (the Honorable Jeffrey S. White) dismissed *Polano* with prejudice, finding that the accidental livestream was not copyrightable.  2022 WL 2668371, at *4.  Judge White reasoned:

> Plaintiff clearly feels aggrieved by comments made about him online by the Individual Defendants and others, but that does not mean Plaintiff has a viable

7

> copyright claim. He does not, and his pursuit of his claim
> has caused the Court to expend significant resources
> addressing his meritless claims. Plaintiff is warned that
> if he persists in filing frivolous or meritless lawsuits, the
> Court may impose sanctions, bar him from filing further
> actions without prior approval, and/or deem him a
> vexatious litigant.

*Id.* at *5.

This Court recently affirmed Judge White's dismissal in full. *Stebbins v. Polano*, No. 23-15531, Dkt. 32 (9th Cir. Aug. 28, 2024) ("*Polano Appeal*"). This Court agreed that "Stebbins failed to allege facts sufficient to show that he was the owner of a valid copyright in the 'accidental livestream.'" *Id.* at 2. This Court rejected every argument that Plaintiff raised on appeal. *Id.* at 1-5.

***Stebbins v. Rebolo***. In January 2022, Plaintiff filed a related suit against Alphabet, YouTube, and at least eight YouTube users who had posted videos criticizing Plaintiff's litigiousness and abuse of the Digital Millennium Copyright Act ("DMCA") takedown process. Plaintiff, proceeding IFP, claimed dozens more "copyright infringements" for virtually every instance where anyone used pieces of his YouTube content to criticize him—including *de minimis* snippets of the accidental livestream, displays of his YouTube channel logo, the sounds of his voice, and screenshots of his face. *See Stebbins v. Rebolo*, No. 22-cv-546-JSW, 2022 WL 2668372, at *3 (N.D. Cal. July 11, 2022) ("*Rebolo*"), *vacated in part on reconsideration*, 2023 WL 2699982 (N.D. Cal. Mar. 28, 2023); *Rebolo*, Dkts. 1, 15.

8

Judge White dismissed the *Rebolo* case in a screening order under 28 U.S.C. § 1915(e)(2)(B). He again warned that Plaintiff risked being declared vexatious, noting that Plaintiff again targeted "plainly fair use criticism," and that his "attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system." *Rebolo*, 2022 WL 2668372, at *3.[1]

In *Polano* and *Rebolo*, Plaintiff was also repeatedly admonished for his pattern of filing improper and frivolous motions. *See, e.g.*, *Polano*, Dkt. 143 at 2 ("Plaintiff's improperly filed motions preempt the use of judicial resources"); *id.*, Dkt. 147 at 2 (admonishment for "noncompliant and frivolous motions"); *id.*, Dkt. 158 at 2 & n.3 (striking unauthorized filings); *Rebolo*, Dkt. 19 at 2 (warning of sanctions for "practice of filing noncompliant, frivolous motions").

Plaintiff has filed at least three similar lawsuits against third-party YouTube users in the Northern District in recent years, including some named in *Polano* and *Rebolo*. *See Stebbins v. Jones*, No. 3:22-cv-04082-AGT, Dkt. 1 (N.D. Cal. filed July 11, 2022); *Stebbins v. Doe d/b/a Sidalpha*, No. 3:23-cv-00321-MMC, Dkt. 1 (N.D. Cal. filed Jan. 20, 2023) ("*Sidalpha*"); *Stebbins v. Garcia Baz*, No. 3:24-cv-00398-

---

[1] Judge White subsequently vacated that judgment and permitted Plaintiff a "final opportunity" to attempt to amend certain claims in *Rebolo* but stated that Plaintiff "has not provided any additional information suggesting that he can cure the defects in his pleading through amendment, and the Court has doubts about his ability to do so." (3-SER-175.) *Rebolo* was stayed pending Plaintiff's *Polano* appeal, and Judge White has not yet screened Plaintiff's amended complaint. *Rebolo*, Dkts. 32-34.

LJC, Dkt. 1 (N.D. Cal. filed Jan. 10, 2024).  Plaintiff asserts claims for copyright infringement, defamation, and violation of the DMCA.  His abusive motion practice continues.  *See, e.g.*, *Sidalpha*, Dkt. 14 ¶ 14 (motion to sanction defendant for "maliciously attempting to drag out the proceeding"); Dkt. 16 at 3 (denying motion).

Plaintiff has also repeatedly sought unwarranted relief from this Court.  In addition to his meritless *Polano* appeal, Plaintiff has filed at least three irregular petitions—all denied in one-page orders.[2]  And he has filed two baseless summary reversal motions—including in this case—that were denied in one-sentence orders.  (*See* Dkts. 3, 11); *Polano Appeal*, Dkts. 2, 17.

## III.   Plaintiff's Instant Lawsuit Against Google Is Yet Another Frivolous Attempt to Silence Fair-Use Criticism

This case is Plaintiff's latest attempt to brandish copyright law to stifle criticism of him.

### A. Alleged Infringement of Plaintiff's Livestream Video

Plaintiff filed the operative complaint in January 2023 (3-SER-318-26) and was granted IFP status (3-SER-317).  As detailed below, Plaintiff alleges that a single image hosted on YouTube infringes one of his copyrighted livestream videos.  (3-SER-321 ¶ 22.)  Instead of suing the user who created and posted the image, he sued Google, asserting a single claim for vicarious copyright infringement based on

---

[2] *See Stebbins v. USDC-CASJ*, No. 11-72595, Dkt. 3 (9th Cir. Nov. 15, 2011); *Stebbins v. USDC-CAOAK*, No. 22-70132, Dkt. 3 (9th Cir. July 12, 2022); *Stebbins v. USDC-CAOAK*, No. 22-70269, Dkt. 3 (9th Cir. Jan. 26, 2023).

its alleged hosting of the allegedly infringing image on YouTube.  (3-SER-323 ¶ 34.)
Plaintiff seeks $150,000 and an injunction requiring Google to terminate the
creator's "google accounts" and "YouTube channels."  (3-SER-326 ¶¶ 54-56.)

According to Plaintiff, on May 16, 2021, Plaintiff recorded a livestream video
that he later uploaded to YouTube and registered with the Copyright Office.  (3-
SER-319 ¶¶ 5, 10.)  The video, titled "Livestream – Acerthorn's Credibility as a
Reviewer (w/ Montyspa on Co-Commentary)" (the "Livestream"), is nearly four
hours long.[3]  (3-SER-319 ¶ 5.)

At some point during the Livestream—between timestamps 2:17:55 to
2:18:23—Plaintiff can be seen "giving a smug smile while [he] put[s] [his] fingers
together in a very smug manner."  (3-SER-319 ¶ 8.)  A copy of the still image from
the Livestream is below:



(3-SER-268, 319 ¶ 5.)

---

[3] The Livestream is available at: https://www.youtube.com/watch?v=iDKSx4oi-r0
(3-SER-319 ¶ 5.)

An unknown user created a YouTube channel called "Acerthorn The True Acerthorn" (the "Channel") that was dedicated to criticizing Plaintiff.[4]  (3-SER-319 ¶ 11.)  Although Plaintiff claims that the Channel was "harassing," he also concedes that the Channel provided "transformative" "criticism and commentary" about him. (3-SER-319 ¶ 11; 3-SER-324 ¶ 41.)

As part of the Channel presentation, the Channel displayed a small, circular icon (the "Channel Icon").  The Channel Icon appears to have been created in part using a "snapshot of the 'smug face'" depicted in the Livestream.  (3-SER-319-20 ¶ 12.)  But the Channel Icon contains "additions" to the image depicted in the Livestream, including "subtitles that contain the words 'Acerthorn' and 'laws'" and "part of another man's face."  (3-SER-323 ¶ 36.)  The red background also differs from the background of the image depicted in Plaintiff's Livestream.  A copy of the image that was used for the Channel Icon—which contains the superimposed phrase "ACERTHORN LAWS" (3-SER-323 ¶ 36)—is below:

---

[4] The Channel was formerly available at:
https://www.youtube.com/@acerthornthetrueacerthorn4532, but the user removed it after Plaintiff filed this lawsuit.  (3-SER-295 ¶ 2; 3-SER-319 ¶ 11.)



(3-SER-296-97.)[5]

The Channel Icon "appear[ed] next to the channel's name" on the Channel's homepage.  (3-SER-319 ¶ 12.)  A copy of the "channel art" image that appeared behind the Channel Icon, which depicted Plaintiff "in front of a wall of twinkies, with a whole twinkie hanging out of [his] open mouth" (3-SER-324 ¶ 41), and which he also concedes was "transformative" "fair use" (*id.*), is below:



(3-SER-295 ¶ 4; 3-SER-298-99.)

---

[5] The version of the Channel Icon as displayed on the Channel was circular and cropped out the squared edges depicted above.  (3-SER-319-20 ¶ 12.)  The image shown above reflects the manner in which it is preserved in Google's systems.  (3-SER-295 ¶ 3.)

A screenshot of the Channel's homepage depicting the content of the Channel where the images were displayed is set out at 3-SER-293.[6]

## B. Plaintiff Files a Barrage of Improper Motions to Forestall Dismissal of His Frivolous Suit

Plaintiff's all too familiar litigation tactics were on full display from the outset of the case. Before Google even appeared, Plaintiff filed an *ex parte* motion for a protective order requesting that the district court "take preemptive action" to "protect [Plaintiff] from having to litigate" against any "forthcoming" motion to dismiss based on "frivolous" "fair use" arguments. (3-SER-311-12, 315.) Google opposed. (3-SER-307-10.) The district court denied the motion. (2-SER-157-58.)

In March 2023, Google filed a motion to dismiss Plaintiff's complaint. Google argued, *inter alia*, that the user's creation and use of the Channel Icon was a non-infringing, fair use of the Livestream, such that Google could not be liable for secondary infringement. (3-SER-184-92, 270-78.) Google also moved for a vexatious litigant order. (3-SER-192-95, 280-86.) One day later, Plaintiff moved to strike Google's motion to dismiss (3-SER-250-55), which the district court later denied (1-SER-16). Plaintiff eventually filed an opposition to Google's motion to

---

[6] The Channel homepage screenshot was taken using the WayBack Machine Internet Archive (available at https://archive.org/web/), which captures, among things, still images of websites as they appeared at certain points in the past. (3-SER-289 ¶ 4.) The image shown at 3-SER-293 is the most recent image available before the Channel was taken down. (*Id.*) Google's counsel was unable to locate a WayBack image that includes the icon at issue. (*Id.*)

14

dismiss and to declare him a vexatious litigant (3-SER-196-99), and Google replied (3-SER-177-95).

In April 2023, just days after briefing finished on Google's motion to dismiss, Plaintiff filed a motion for "partial summary judgment" seeking a declaration that the Channel Icon should not "be considered fair use," and noticed it for hearing *ahead* of Google's dismissal motion.  (3-SER-163.)  The district court admonished Plaintiff that his motion "may not serve as an unauthorized sur-reply" and struck it "for purposes of the motion to dismiss."  (2-SER-160.)

On July 17, 2023, Plaintiff filed a belated motion for leave to file an amended complaint (2-SER-115-17), six months after filing his original complaint and while Google's dismissal motion and his own summary judgment motion remained pending.  Although nominally styled as an amended complaint, the bulk of the document (**85 paragraphs**) contained legal arguments regarding Google's fair-use defense that Plaintiff claimed "absolutely need[ed] to be considered."  (*See* 2-SER-115 ¶ 4; 2-SER-130-46 ¶¶ 70-155.)

Google opposed, arguing, *inter alia*, that the proposed amended complaint was another unauthorized sur-reply to Google's dismissal motion, that it would unduly prejudice Google, and that it was Plaintiff's latest attempt to avoid dismissal of his existing claim and a vexatious litigant finding.  (2-SER-87-88.)

15

## C. The District Court Dismisses Plaintiff's Complaint with Prejudice and Declares Him a Vexatious Litigant

On August 31, 2023, the district court dismissed Plaintiff's Complaint with prejudice.  It determined that the Channel Icon was a fair use of the Livestream under the Copyright Act's four-factor test, 17 U.S.C. § 107.  (1-SER-18-22.)  The court also denied Plaintiff's motion for leave to file an amended complaint based on "undue delay, prejudice, and bad faith."  (1-SER-11-14.)

In the same order, the court declared Plaintiff a vexatious litigant in the Northern District and issued a pre-filing screening order (the "Screening Order"), finding that each element of this Court's governing test was satisfied.  (1-SER-22-26.)  The Screening Order applies to any future actions Plaintiff files in the Northern District "against Google LLC, YouTube LLC, Alphabet Inc., or any of their affiliates," "any claim of copyright infringement or copyright-related claims against any defendant," and Plaintiff's IFP applications.  (1-SER-26.)

The district court also denied Plaintiff's motion to strike Google's motion to dismiss (1-SER-16) and Plaintiff's motion for partial summary judgment (1-SER-15).

## D. The District Court Denies Plaintiff's Post-Judgment Motions

Plaintiff moved to vacate the dismissal order pursuant to Federal Rule of Civil Procedure 60(b); Google opposed.  (2-SER-49-50, 64-78.)  Before the court ruled, Plaintiff filed a motion for leave to move for reconsideration, which merely

16

"incorporated by reference" his Rule 60 motion.  (2-SER-41 ¶ 3.)  The district court denied both motions in March 2024.  (1-SER-2-6.)

Plaintiff appealed.  (3-SER-337-38.)

## SUMMARY OF ARGUMENT

***Dismissal Based on Fair Use***.  The district court properly dismissed Plaintiff's copyright claim on the ground that the Channel Icon was a fair use of Plaintiff's Livestream.  (Section I.)  Applying Section 107's four-factor test, the court correctly determined that all the factors supported fair use.  *First*, the sole purpose of the Channel Icon was to criticize and comment on Plaintiff's behavior— a transformative use protected by the Copyright Act.  (Section I.A.)  *Second*, the "nature" of the Livestream was "undoubtedly more informational than creative," and thus far from the core of copyright protection.  (Section I.B.)  *Third*, the "amount" of the Livestream that the Channel Icon used was infinitesimal—a significantly modified version of a single still image from a four-hour video—and the "minimal amount necessary" to further the icon's transformative purpose.  (Section I.C.) *Fourth*, the Channel Icon could not possibly usurp any market for Plaintiff's Livestream or any protectible derivative thereof.  (Section I.D.)  Because the challenged image was a non-infringing fair use, Plaintiff's copyright claim failed as a matter of law, and the court properly exercised its discretion to dismiss it with prejudice.

17

***Vexatious Litigant Order***.  The district court did not abuse its discretion by declaring Plaintiff a vexatious litigant and entering the Screening Order.  (Section II.)  The Screening Order complied with the procedural requirements for vexatious litigant determinations because Plaintiff had notice and his opposition was considered (Section II.A), and the court compiled an adequate record for review (Section II.B).  The Screening Order was also amply supported by the district court's substantive findings as to the frivolous nature of Plaintiff's litigation.  (Section II.C.)  That included an examination of his nearly fifteen-year spree of inundating federal courts with meritless cases and bad-faith motion practice, which he has reprised repeatedly in the Northern District in the last several years, with Google, YouTube, and third-party YouTube users as his latest targets.  Finally, the Screening Order is appropriately tailored to Plaintiff's wrongful litigation conduct, since it applies narrowly to the particular defendants and types of claims that have been the subject of his vexatious lawsuits in the Northern District.  (Section II.D.)

***Denial of Leave to Amend***.  Nor did the district court abuse its discretion in denying Plaintiff's motion for leave to file an amended complaint, setting out multiple, independently sufficient grounds in its order.  (Section III.)  *First*, Plaintiff sought amendment in bad faith—as an unauthorized sur-reply to Google's motion to dismiss Plaintiff's existing claim and to delay a ruling on Google's motion and request that Plaintiff be declared vexatious.  (Section III.A.)  *Second*, Plaintiff was

18

dilatory in seeking amendment, since he knew of his new proposed claims but inexcusably waited up to a year before seeking leave to assert them. (Section III.B.) *Third*, Plaintiff's undue delay would have prejudiced Google, who had already been forced to litigate the many frivolous motions that Plaintiff had filed to evade dismissal. (Section III.C.)

## STANDARDS OF REVIEW

The district court's "grant of a motion to dismiss [is reviewed] de novo." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 526 (9th Cir. 2008).

This Court reviews for abuse of discretion a pre-filing screening order entered against a vexatious litigant, *see Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056-57 (9th Cir. 2007); the denial of a motion for leave to amend a complaint, *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); and the denial of a motion to vacate judgment or for leave to file a motion for reconsideration, *see Pasatiempo by Pasatiempo v. Aizawa*, 103 F.3d 796, 801 (9th Cir. 1996).

## ARGUMENT

**I.    The Channel Icon Is a Fair Use of Plaintiff's Livestream**

"To establish secondary infringement, [a plaintiff] must first demonstrate direct infringement" by a third party. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2010). Thus, to prevail on his sole vicarious infringement

19

claim against Google, Plaintiff was required to show that the Channel operator's use of the Channel Icon directly infringed his copyright in the Livestream. But Plaintiff could not make that showing, because use of the Channel Icon was a paradigmatic fair use.

The Copyright Act provides that "the fair use of a copyrighted work, including such use by reproduction in copies … for purposes such as criticism [or] comment, … is not an infringement of copyright." 17 U.S.C. § 107. It sets forth a four-part test, which is "not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

Plaintiff contends that it was error for the district court to make its fair-use determination at the pleading stage. (AOB ¶ 9.) But while fair use "is a mixed question of fact and law," *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 49 (2021), courts routinely dismiss infringement claims under Rule 12(b)(6) where it is apparent from the face of the complaint that the alleged conduct is fair use, *see, e.g.*, *Leadsinger*, 512 F.3d at 530 (the "assertion of fair use may be considered on a motion to dismiss … when no material facts are in dispute"); *Sedgwick Claims Mgmt. Servs. v. Delsman*, 2009 WL 2157573, at *4 (N.D. Cal. July 16, 2009)

20

(dismissing claim on fair-use grounds at pleading stage); *Santos v. Kimmel*, --- F. Supp. 3d ---, 2024 WL 3862149, at *1 (S.D.N.Y. Aug. 19, 2024) (same).[7]

Here, the district court correctly determined that "all of the fair use factors" supported fair use (1-SER-21), based on the face of Plaintiff's Complaint and "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice," *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Those materials included copies of the image from the Livestream, the Channel Icon, and a screenshot of the Channel. (3-SER-293, 297, 299.) The district court properly considered these materials (1-SER-18) because they were referenced, described, and/or hyperlinked in the Complaint (3-SER-319 ¶¶ 5, 8-9, 11-12), and their authenticity was undisputed.

### A. The Use of the Modified Image as a Channel Icon Is Transformative

The first fair-use factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The 'central' question it asks is whether the new work merely 'supersede[s] the objects' of the original creation … or instead adds something new, with a further purpose or different character," thus making it

---

[7] *See also, e.g.*, *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *6 (C.D. Cal. Aug. 20, 2015); *DraftExpress, Inc. v. Whistle Sports, Inc.*, 2022 WL 16962285, at *5 (C.D. Cal. Aug. 2, 2022); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (same).

"transformative." *Andy Warhol v. Goldsmith*, 598 U.S. 508, 527-29 (2023) (quoting *Campbell*, 510 U.S. at 579) (cleaned up). "'[T]ransformativeness' is a matter of degree"—the "larger the difference" between the purpose of the original and secondary work, "the more likely the first factor weighs in favor of fair use." *Id.* at 529 (citation omitted). The "more transformative the new work, the less will be the significance of other factors … that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579 (citation omitted).

### 1. The Channel Icon's Purpose Is Transformative Criticism And Commentary

Section 107 "expressly permits fair use for the purposes of criticism and comment." *Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986); *see also* 17 U.S.C. § 107. "[W]orks that comment and criticize … are by their nature often sufficiently transformative to fit clearly under the fair use exception." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003) (citing *Campbell*, 510 U.S. at 579).

It is readily apparent from the face of the Complaint and incorporated materials that the Channel Icon is a transformative use of the Livestream for the purpose of criticizing and commenting on Plaintiff's litigiousness and online conduct. The Channel Icon superimposes the text "ACERTHORN LAWS" around the altered screenshot image of Plaintiff's face—an unmistakable reference to Plaintiff's abuse of copyright law and the judicial system. *See, e.g.*, *Hannley v.*

22

*Mann*, 2023 WL 3407183, at *4 (C.D. Cal. Mar. 8, 2023) (fair use for defendant to post image of plaintiff as "profile picture of a satirical" Twitter account dedicated to "negative criticism" of plaintiff, "particularly his appearance, his bankruptcy cases, and his purported corruption").

The icon's critical nature is further "support[ed]" by the broader "context" of the Channel where the icon appeared. (1-SER-19.) Indeed, the Complaint alleges that portions of the Channel provided "transformative" "criticism and commentary" about Plaintiff, including by mocking his appearance in a "channel art" image. (3-SER-299; 3-SER-324 ¶ 41.) Several video titles on the Channel also criticized Plaintiff for being a "doxxer" and "sub botting"—frowned-upon practices in the online community—and mocked the contents of Plaintiff's YouTube videos, including his theme song and embarrassing moments from his videos, such as when "Acerthorn Eats a Fly." (*See* 3-SER-293 (screenshot of channel); 3-SER-324-25 ¶¶ 45-47.) The Channel recommended that visitors view content posted by other YouTube users that Plaintiff has sued for criticizing him (*see supra* pp. 9-10), whom the Channel dubbed "Acerthorn's Archenemies" (3-SER-293). The Channel also referenced an "Alternate Channel" that similarly criticizes Plaintiff's YouTube videos and litigiousness, including with the mocking assertion that "I'm working super hard on these videos, I swear!" and the mocking threat of "gimme money … or I'll sue you." (3-SER-293.)

23

By Plaintiff's own admission, the "entire purpose" of the Channel was to "put [him] on public display for mockery" and criticism. (1-SER-19 (citing 3-SER-218 ¶ 36).) Such criticism and mockery of Plaintiff and his videos, deserved or not, is unquestionably transformative, as courts confronting similar facts have repeatedly held in dismissing infringement claims at the pleading stage. *See, e.g.*, *Sedgwick*, 2009 WL 2157573, at *5 ("there can be no legitimate dispute" that copying of plaintiff's photographs was transformative where defendant used headshots of plaintiff's executives to criticize its business practices); *City of Inglewood*, 2015 WL 5025839, at *6-8 (defendant's videos were "highly transformative" where they used "brief portions" of plaintiff's YouTube videos "in order to comment on, and criticize [plaintiff's] political activities"); *Santos*, 2024 WL 3862149, at *1 (using portions of George Santos's copyrighted videos to criticize and mock the videos and "their author" was "transformative"); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 391 (S.D.N.Y. 2020) (fair use where it was "clear from the face of [plaintiff's] Complaint that [defendant] copied portions of [plaintiff's YouTube video] for the transformative purposes of criticism and commentary," including "mock[ery]"); *Greenspan v. Qazi*, 2021 WL 2577526, at *11 (N.D. Cal. June 23, 2021) (fair use where defendant "expressed something new" by using portions of plaintiff's autobiography to "mock" him).

24

On appeal, Plaintiff completely ignores the context of the Channel and fixates on the Channel Icon to the exclusion of everything else, arguing that the phrase "Acerthorn Laws" and the icon's "background changes" do not themselves "say anything about [him]." (AOB ¶¶ 4-9.) But "fair use depends on the context," *Oracle Am.*, 593 U.S. at 23, and placing a copyrighted work "in a different context" such that it is "transformed into a new creation" weighs strongly in favor of fair use, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (citation omitted). Thus, even if the critical nature of the Channel Icon was unclear from the icon itself—and it is not—any "reasonable observer who came across the [icon] would quickly grasp its critical purpose" from the "broader context" of the "YouTube channel" in which the icon appeared. *Hughes*, 437 F. Supp. 3d at 389-92; *accord Santos*, 2024 WL 3862149, at *5 (any "reasonable observer would understand" based on context that Kimmel used Santos's videos to criticize him).

The transformativeness of the Channel Icon is further reflected in the substantial "degree of difference" between its purpose and the Livestream's purpose. *Goldsmith*, 598 U.S. at 525. Plaintiff created the four-hour Livestream to "exchang[e] opinions about a game called Dark Souls, as well as the skill with which [he] alleged[ly] handled feedback regarding my prior criticism of that game." (3-SER-319 ¶ 7.) In marked contrast, Plaintiff admits that the "entire purpose" of the Channel Icon and Channel was to mock and criticize him. (3-SER-218 ¶ 36.) That

25

purpose could not be further from Plaintiff's own, which counsels heavily in favor of fair use. *Goldsmith*, 598 U.S. at 529 ("[t]he larger the difference, the more likely the first factor weighs in favor of fair use"); *see also Santos*, 2024 WL 3862149, at *1.

Further, although the Channel Icon—and the Channel more broadly—mock and criticize both Plaintiff *and* his copyrighted YouTube content, the Supreme Court has explained in the context of parody—a form of criticism and commentary—that "taking … aim at an original [work] is a less critical factor in the analysis" under the first factor where "there is little or no risk of market substitution, whether because of the large extent of transformation of the earlier work, the new work's minimal distribution in the market, the small extent to which it borrows from an original, or other factors." *Campbell*, 510 U.S. at 581 & n.14. As discussed *infra* pp. 34-38, here there is no risk of market substitution, and the remaining factors favor fair use.

Plaintiff's suggestion that the Channel Icon does not add sufficiently "new expression" to the copied image misses the point. (AOB ¶ 5.) "Although new expression may be relevant to whether a copying use has a sufficiently distinct purpose or character, it is not … dispositive of the first factor," or required at all. *Goldsmith*, 598 U.S. at 525. In fact, "verbatim reproductions" that add no new expression "are justifiable where the purpose of the work differs from the original." *Mattel*, 353 F.3d at 803 n.8. Here, given the starkly different purposes, the district

26

court correctly determined that the Channel Icon "falls squarely into transformative use." (1-SER-19.)

To the extent Plaintiff argues that fair use does not apply because the Channel operator's criticism was purportedly intended to "harass" Plaintiff (AOB ¶¶ 35, 47), that argument ignores that "the fair use inquiry does not ask whether the criticism" is "mean-spirited," *Hannley*, 2023 WL 3407183, at *5. That is because fair use "is an *objective* inquiry into what a user does with an original work, not an inquiry into the subjective intent of the user," *Goldsmith*, 598 U.S. at 512 (emphasis added); *accord Savage v. Council on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *5 (N.D. Cal. July 25, 2008) ("it is the manner of use, not the motivation behind it, which must be analyzed"); *cf. Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (First Amendment protects critical parodies that are "patently offensive and … intended to inflict emotional injury"). Here, the objective inquiry makes clear that the Channel Icon is fair-use criticism.[8]

Plaintiff's own subjective experience of the criticism as "harassment" and his speculation about the Channel operator's "bad faith" does not change the analysis.

---

[8] Plaintiff's heavy reliance on the "unclean hands" doctrine as a supposed "exception to fair use" is also misplaced. (AOB ¶¶ 33-56.) That doctrine is an affirmative *defense* that "bars relief to a plaintiff who" engaged in misconduct related to their claim. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *accord Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (in copyright cases, "the defense of … unclean hands is recognized only rarely, when the plaintiff's transgression is of serious proportions") (cleaned up). It has no application here.

*Goldsmith*, 598 U.S. at 512; *see also Oracle Am.*, 593 U.S. at 32 ("[c]opyright is not a privilege reserved for the well-behaved"). Section 107's protection of critical uses would be a dead letter if any copyright owner could "counter" fair use by claiming they felt "harassed" by criticism. (AOB ¶¶ 43-44.) Similarly, while Plaintiff also characterizes the Channel operator's subjective intent as being in "bad faith" (*id.* ¶ 42), "bad faith" is largely (if not entirely) irrelevant to the fair use analysis. *See Oracle Am.*, 593 U.S. at 32; *Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*, 2021 WL 3721438, at *1 (9th Cir. Aug. 23, 2021). When courts have considered "bad faith," it is generally to determine whether the alleged infringer exhibited bad faith in *accessing* the copyrighted work, such as through "misrepresentation or subterfuge," or by copying the work after being denied permission to use it. 4 *Nimmer on Copyright* § 13F.05[E][2]-[3] (collecting cases). Far from alleging anything like that here, Plaintiff admits that he publicly posted the Livestream to YouTube for anyone to access. (3-SER-319 ¶ 5.)

## 2.  The Channel Icon's Use Is Non-Commercial

Whether a use serves a "commercial" or "nonprofit" aim "is an additional element" of the first factor that must be "weighed against the degree to which the use has a further purpose or different character." *Goldsmith*, 598 U.S. at 510.

Here, as the district court correctly observed, nothing suggests that the Channel Icon or Channel had any commercial purpose, and Plaintiff has never

28

alleged otherwise. (1-SER-20.) It is implausible that a channel whose "entire" niche purpose is to criticize and mock Plaintiff could have any commercial nature to speak of. Regardless, even if there were some hypothetical commercial purpose, factor one would still favor fair use given the icon's transformativeness. *Goldsmith*, 598 U.S. at 510; *see also SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278-79 (9th Cir. 2013) (use of video clip from *The Ed Sullivan Show* for "commercial production is of little significance" given transformative nature); *City of Inglewood*, 2015 WL 5025839, at *9 (fair use despite assuming commercial purpose, since secondary use was a "quintessential transformative work[] for the purpose of criticism and commentary"); *DraftExpress*, 2022 WL 16962285, at *5 ("Even if the [defendant's video] were considered at least partially commercial, its transformative nature offsets the significance of any commercialism.").

## B. The Livestream Is Far from the Core of Copyright

The second fair use factor concerns the "nature of the copyrighted work." 17 U.S.C. § 107(2). "[C]opyright protects originality." *Mazer v. Stein*, 347 U.S. 201, 218 (1954). Thus, this factor focuses on whether the copyrighted work "is imaginative and original, or whether it represented a substantial investment of time and labor made in anticipation of a financial return." *Hustler*, 796 F.2d at 1153-54. This factor "typically has not been terribly significant in the overall fair use balancing," *Mattel*, 353 F.3d at 803 (citation omitted), especially where

29

"transformative uses are involved," *Sedgwick*, 2009 WL 2157573, at *6. Regardless, it amply supports the district court's fair-use determination.

### 1. The Livestream Is Informational, Not Creative

Importantly, "[t]he scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Hustler*, 796 F.2d at 1153-54. In the context of videos, this Court has held that a clip containing "mainly factual information" is not "near to the core of copyright." *SOFA Ent.*, 709 F.3d at 1279 (second factor favored fair use of informational clip from *The Ed Sullivan Show*).

Here, the district court correctly found that the Livestream was "undoubtedly more informational than creative" (1-SER-20), and that determination is firmly grounded in the record. For the entirety of the Livestream, a static camera is fixated on Plaintiff as he discusses video games. The interviewer never appears on camera, and the only other images shown are a handful of unaltered webpages. The video is otherwise unedited and reflects virtually no creative production choices. Plaintiff's "factual and informational" video thus embodies "relatively little creativity." *DraftExpress*, 2022 WL 16962285, at *4 (factor favored fair use where video consisted of a "simple, static close-up shot" of interviewee speaking); *accord Savage*, 2008 WL 2951281, at *6-7 (audio excerpts from a radio talk show were "more informational than creative"); *City of Inglewood*, 2015 WL 5025839, at *9-

30

10 (copyrighted videos were "straightforward recordings of public proceedings," "not creative in nature," and entitled to "very narrow copyright protection").

Plaintiff suggests that the relevant inquiry is not the creativity of the overall Livestream, but of the specific portion copied, an argument the district court supposedly "ignored." (AOB ¶¶ 14-15.) But Section 107(2) expressly calls for an analysis of "the nature of the copyrighted *work*," and Plaintiff cites no authority suggesting otherwise. Regardless, a still shot of Plaintiff making an ordinary facial expression reflects little (if any) creativity.

### 2. The Livestream Is Published

"The fact that a work is published or unpublished also is a critical element of its nature." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Id.*

When Plaintiff posted the Livestream, he distributed it to the public and granted YouTube (and its users) a license to reproduce and display it (and prepare derivative works).[9] (3-SER-319 ¶ 5.) That constitutes a "publication," 17 U.S.C. § 101, and favors fair use, *see Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) § 1906.1 ("[p]ublication occurs when copies of a photograph are

---

[9] *See* YouTube, Terms of Service (Mar. 17, 2021), https://www.youtube.com/t/terms?archive=20210317.

offered to … websites with a license permitting further distribution or display"); *Brunson v. Cook*, 2023 WL 2668498, at *13 (M.D. Tenn. Mar. 28, 2023) (work is "published" when "made available to YouTube … due to the terms of use or services to which a creator on the[] platform[] must agree in order to post the work").

### C. The Channel Icon Uses a *De Minimis* Portion of the Livestream

The third fair use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). It "looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013). "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against fair use." *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 650 (9th Cir. 2020) (citation omitted). And if a defendant's use is transformative, this factor will generally favor fair use. *See Oracle Am.*, 593 U.S. at 33. Even "copying a larger amount of material" can be fair use where the portion copied "captures little of the material's creative expression or is central to a copier's valid purpose." *Id.*

The district court correctly concluded that "this factor favors" fair use. (1-SER-12-13.) As to the quantitative amount, the Channel Icon was a split-second screenshot from a four-hour video. In the analogous context of video games, this Court has recognized that "there can be no doubt that a screen shot is a small amount

32

of a video game." *Sony Comput. Ent't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (factor favored fair use). Nor does Plaintiff contend otherwise.

As to qualitative significance, Plaintiff offers only the tautological contention that the screenshot was necessarily the "heart" of the Livestream because the Channel operator chose that frame. (AOB ¶ 23.) But, by that logic, the third factor could never favor fair use, and the district court correctly rejected it as "unreasonable." (1-SER-21.)

The correct inquiry is whether the copied portion is a "qualitatively significant segment of the overall [work]." *SOFA Ent.*, 709 F.3d at 1279. This Court has held, for example, that the seven-second introduction from an episode of *The Ed Sullivan Show* was "hardly qualitatively significant" where "Sullivan simply identifies the group that is about to perform." *Id.* The Channel Icon is even less qualitatively significant. Whereas the Livestream is a four-hour video of Plaintiff discussing his video game reviews, the icon used only a single, audio-less image. As in *Bleem*, the "screen shot is of little substance to the overall copyrighted work." 214 F.3d at 1028 (screenshot was "insignificant portion" since video games "involve plots that … may elapse over several hours"); *DraftExpress*, 2022 WL 16962285, at *4 (the "heart of an interview is the interviewee's substantive answers to questions").

Finally, the challenged use here was "tethered to a valid, and transformative, purpose," *Oracle Am.*, 593 U.S. at 4, and the Channel Icon used the bare "minim[um]

33

amount necessary for th[at] purpose" (1-SER-21). *Accord City of Inglewood*, 2015 WL 5025839, at *10 (fair use where defendant's YouTube videos used "small portions" of plaintiff's videos for commentary and criticism); *Hughes*, 437 F. Supp. 3d at 392-94 (same). That further favors fair use.

### D. The Channel Icon Does Not Affect Any Market for the Livestream

The final factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court has described this as "undoubtedly the single most important element of fair use." *Oracle Am.*, 593 U.S. at 50 n.5 (citation omitted). It "requires courts to consider the secondary use's impact on the market for the original work and the market for derivative works." *SOFA Ent.*, 709 F.3d at 1280. Because "[c]opyright law is not designed to stifle critics," "the economic effect … with which [courts] are concerned is not [the] potential [of the secondary use] to destroy or diminish the market for the original … but rather whether it *fulfills the demand* for the original." *Fisher v. Dees*, 794 F.2d 432, 437-38 (9th Cir. 1986). Here, given the Channel Icon's use of a single still image from the Livestream for transformative mockery and criticism, it is clear that the icon cannot possibly fill any hypothetical demand for the Livestream itself or any protectable derivative thereof.

### 1. The Channel Icon Does Not Affect Any Protectable Derivative Market for the Livestream

Plaintiff's lead argument below, which he references on appeal without supporting argument, was that the Channel Icon could usurp a "potential" "derivative" market to license screenshots of his face from the Livestream to third parties, including for use in "critical" "channel icons" on YouTube.[10] (3-SER-227-29 ¶¶ 77, 80, 82-85.)

Plaintiff's suggestion that he could license images of his face for precisely the type of transformative secondary use at issue does not help him under this factor. (3-SER-229 ¶ 85 (claiming Plaintiff "likely" would have licensed the Channel Icon).) The factor considering market harm would never favor fair use if copyright owners could simply invoke a "potential" market that "is defined as the theoretical market for licensing the very use at bar," because *any* otherwise transformative fair use could theoretically be the subject of licensing, and thus said to harm the market for such licenses. *Tresona*, 953 F.3d at 652 (quoting 4 *Nimmer on Copyright* § 13.05[A][4]). Courts have therefore consistently held that "a copyright holder

---

[10] Plaintiff mischaracterizes the record by claiming that the court and Google did not address this issue below. (AOB ¶ 28.) Google rebutted Plaintiff's argument (3-SER-190-92), and the court correctly chose not to credit it (1-SER-21). Regardless, this Court may "affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

cannot prevent others from entering fair use markets merely 'by developing or licensing a market for parody, news reporting, educational, or other transformative uses of its own creative work.'" *Id.* (cleaned up); *accord Apple Inc. v. Corellium, Inc.*, 2023 WL 3295671, at *12 (11th Cir. May 8, 2023) ("[A] copyright holder can't prevent others from entering transformative markets"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006) ("[C]opyright owners may not preempt exploitation of transformative markets." (cleaned up)). So too here, Plaintiff cannot preempt the Channel Icon's transformative use of the at-issue image by claiming that he would have participated in a potential market for licensing "the very use at bar." *Tresona*, 953 F.3d at 652.

This Court has explained that the concept of "potential" licensing revenues under factor four applies only to "traditional, reasonable, or likely to be developed markets." *Seltzer*, 725 F.3d at 1179 (cleaned up). Here, Plaintiff has not plausibly alleged a potential derivative market for "the right to use [his] face" as depicted in the Livestream (3-SER-229 ¶ 85) that is traditional, reasonable, or likely to be developed, *Seltzer*, 725 F.3d at 1179. Plaintiff is not a celebrity, and the notion that there is an untapped "potential" commercial market for pictures of his face does not pass the straight-face test.

This is especially true for Plaintiff's imagined market for licensing images of his face specifically for use in "critical" "channel icons" on YouTube. (3-SER-227

36

¶¶ 77, 80; *see also* AOB ¶¶ 26, 30.)  Because the "market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop," the "unlikelihood that creators of imaginative works will license critical reviews … removes such uses from the very notion of a potential licensing market." *Campbell*, 510 U.S. at 592.  Thus, as the Supreme Court has held, "there is no protectible derivative market for criticism." *Id.*; *accord Mattel*, 353 F.3d at 806 (sexualized Barbie pictures did not invade derivative market where the pictures "could only reasonably substitute for a work in the market for adult-oriented artistic photographs of Barbie," and it was "safe to assume that Mattel will not enter such a market or license others to do so").

Plaintiff's attempts to invoke hypothetical, potential derivative markets fail as a matter of law.

### 2.  The Channel Icon Does Not Affect Any Existing Market for the Livestream

Plaintiff has never argued that there is an *existing* commercial market for the Livestream or that the Channel Icon could usurp that market, so any such argument is waived.  (AOB ¶¶ 26-32.)  Regardless, Plaintiff cannot plausibly allege that there exists a commercial market for a four-hour video of him discussing the credibility of his own video-game reviews.  *See Savage*, 2008 WL 2951281, at *9 (fair use where there was "no suggestion that plaintiff currently has, or ever had, any kind of market for the copyrighted work at issue").

37

But even if there were a commercial market for the Livestream, it could not be usurped by a static, edited screenshot that provides an entirely different viewer experience. Because the Channel Icon comments on and criticizes Plaintiff (as does the Channel more broadly), watchers of the Livestream would not view the Channel Icon as a substitute for the work. *See Fisher*, 794 F.2d at 438 ("consumers desirous of hearing [composers'] romantic and nostalgic ballad … would [not] be satisfied to purchase the parody instead"). Courts consistently dismiss copyright claims where, as here, the alleged infringement cannot plausibly cause the type of market harm that copyright law protects. *See Savage*, 2008 WL 2951281, at *9 (no market harm where "the effect of defendants' usage is limited to the public criticism," "not market damage in the economic sense"); *DraftExpress*, 2022 WL 16962285, at *5 (same, where defendant's video was "not a market substitute" because "someone watching [it] … will have a 'very different experience' from watching the [plaintiff's video]"); *City of Inglewood*, 2015 WL 5025839, at *12 (similar); *Hughes*, 437 F. Supp. 3d at 394 (similar). The district court was correct in doing so here. (1-SER-21.)

\* \* \*

As the district court recognized, "all of the fair use factors" together compel a finding that the Channel Icon is a non-infringing fair use. (1-SER-21.) Because "no additional allegations" could cast doubt on that conclusion, the court correctly held that amendment would be "futile" and dismissed with prejudice. (1-SER-21-22.)

38

This Court should affirm. *See Leadsinger*, 512 F.3d at 532 (affirming dismissal in copyright case where "amendment relating to … fair use … would have been futile"); *Polano Appeal*, Dkt. 32 at 4 (affirming dismissal with prejudice of Plaintiff's copyright claim because "amendment would be futile").

## II.    The District Court Did Not Abuse Its Discretion in Issuing a Vexatious Litigant Screening Order

"[F]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Molski*, 500 F.3d at 1057 (cleaned up). That is exactly what Plaintiff has been doing for nearly fifteen years, and the last several years in the Northern District. Pursuant to the All-Writs Act, 28 U.S.C. § 1651(a), the district court properly exercised its "inherent power to enter [a] pre-filing order[] against [a] vexatious litigant[]." *Molski*, 500 F.3d at 1057.

This Court affirms pre-filing orders that comply with four factors: (1) the vexatious litigant is "given notice and a chance to be heard before the order is entered"; (2) the district court compiles "an adequate record for review"; (3) the court "make[s] substantive findings about the frivolous or harassing nature of the plaintiff's litigation"; and (4) the order is "narrowly tailored to closely fit the specific vice encountered." *Molski*, 500 F.3d at 1057 (cleaned up).

Here, the Screening Order requires pre-filing approval by the Northern District duty judge of: (1) "any future actions against Google LLC, YouTube LLC,

39

Alphabet, Inc., or any of their affiliates"; and (2) "any claim of copyright infringement or copyright-related claims against any defendant." (1-SER-26.) When seeking to file any such complaints, Plaintiff must provide a copy of the district court's order to the duty judge and a letter requesting that the complaint be filed. (*Id.*) Plaintiff must also attach the court's order to any application to proceed *in forma pauperis*, "along with a statement seeking screening of the complaint and a statement explaining why the action should be allowed to proceed." (*Id.*)

The Screening Order satisfies each element of this Court's four-factor test, and Plaintiff fails to establish any abuse of discretion.

### A. Plaintiff Had Notice and Was Heard

Plaintiff had notice of Google's motion and was heard in opposition. *Molski*, 500 F.3d at 1058. As in *Molski*, Google filed and served a motion and supporting declaration detailing the bases for its requested vexatiousness declaration and screening order, and Plaintiff filed an opposition. (3-SER-230-33, 280-86, 289-91, 300.) Such "opportunity to brief the issue fully satisfies due process requirements" under this factor. *Molski*, 500 F.3d at 1058-59 (quotation omitted).

Plaintiff cites no on-point authority for his claim that he was entitled to "discovery" and a "full-blown hearing" (AOB ¶ 94), particularly given *his* request that the district court "dispose[] of [the motion] on the pleadings" (2-SER-156).

40

Nor is Plaintiff correct that he should have been appointed counsel (AOB ¶ 94); he chose to proceed *pro se* (as he always does). *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, is inapposite, as it found no error in the failure to appoint counsel. 452 U.S. 18, 25, 31-33 (1981).

## B. The District Court Compiled an Adequate Record for Review

The district court also compiled an adequate record for review. This purely "procedural consideration[]" requires only that the court "include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *Molski*, 500 F.3d at 1057, 1059 (cleaned up). Here, the court adequately identified the eight cases that it "reviewed" of the "the extensive list of some of the cases filed by Plaintiff" provided by Google (1-SER-23-24, 3-SER-283, 289-91)—a sufficient sample of Plaintiff's 40-plus federal lawsuits that covered a range of frivolous lawsuits from 2011 and 2022, in the Northern District and elsewhere. The court also considered "the hundreds of motions that have been filed in these cases, along with those filed in this case," and echoed the universal agreement among courts that Plaintiff's motions are largely meritless. (1-SER-24.) Plaintiff's suggestion that his motion practice was not raised below (AOB ¶ 105) is refuted by the record: Google's motion discussed Plaintiff's abusive motion practice (3-SER-283-84), its supporting declaration identified specific motions and denial

41

orders (3-SER-290-91), and the district court's order expressly addressed it (1-SER-24).

To the extent Plaintiff suggests that the court erred by not listing every motion he filed in each reviewed case (AOB ¶¶ 107-09), such specificity is not required even for the *cases* a court considers, much less for the individual motions within them. *See Molski*, 500 F.3d at 1059 (finding an adequate record even though "court's decision entering the pre-filing order did not list every case filed by [the plaintiff]" but "did outline and discuss many of them"); *Block v. Wash. State Bar Ass'n*, 860 F. App'x 508, 510 (9th Cir. 2021) (same, where "the district court referred to the long list of cases identified in opposing counsel's declaration"); *Schafler v. HSBC Bank USA*, 310 F. App'x 181, 182 (9th Cir. 2009) (same, where court "outlin[ed] and discuss[ed] [the plaintiff's] frivolous and harassing litigation"). Nor would it be practical here, given the overwhelming volume of Plaintiff's motions.

### C. The Screening Order Is Supported by Substantive Findings as to the Frivolous and Harassing Nature of Plaintiff's Litigation

The district court also made ample "substantive findings as to the frivolous or harassing nature of [Plaintiff's] actions." *Molski*, 500 F.3d at 1059 (cleaned up). "To decide whether the litigant's actions are frivolous or harassing, the district court must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Id.* (cleaned up).

42

As to "number," the court properly considered Plaintiff's history of frivolous and abusive litigation in various jurisdictions, including eight cases spanning four districts and two appellate courts (1-SER-23-24 (citing cases)). *See, e.g.*, *Drevaleva v. McDonough*, 2022 WL 15173728, at *5-6 (N.D. Cal. Oct. 26, 2022), *aff'd*, 2024 WL 1342669 (9th Cir. Mar. 29, 2024) (declaring plaintiff "vexatious" where numerous orders from other jurisdictions "expressly found Plaintiff's cases and appeals frivolous"). Plaintiff offers no authority for his contention that the district court should only have considered the three other cases he had filed against Google or its affiliates in the Northern District (as of then). (AOB ¶¶ 86-88, 95.) To the contrary, this Court has recognized that "a pattern of frivolous or abusive litigation *in different jurisdictions* undeterred by adverse judgments may inform a court's decision that an injunction is necessary." *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1066 (9th Cir. 2014) (emphasis added); *accord Drevaleva*, 2022 WL 15173728, at *6 (noting "pattern of improper and meritless filings" in other jurisdictions).

As to the "content" of Plaintiff's lawsuits and filings, it is evident that they have been "patently without merit." *Molski*, 500 F.3d at 1059. As the district court's order makes clear, each of the eight cases it considered was dismissed for being frivolous. (1-SER-23-24.) For example, three involved attempts by Plaintiff "to confirm nonexistent arbitration awards," *Stebbins v. Texas*, 2011 WL 6130403, at

43

\*3 (rejecting Plaintiff's request to confirm a non-existent ***$500 billion*** arbitration award against Texas Attorney General); *see also Stebbins v. Google*, 2011 WL 5150879, at \*3-4 (same as to non-existent ***$500 billion*** award against Google); *Microsoft*, 2012 WL 12896360, at \*1 (same as to non-existent ***$1.5 trillion*** award). The others similarly involved claims that were "patently frivolous and hav[e] no basis in fact." *Bradford*, 2013 WL 3366289, at \*2.

The district court also properly considered the vexatious litigant determination and pre-filing restrictions imposed on Plaintiff in the Western District of Arkansas (1-SER-24; AOB ¶¶ 91-92), which were affirmed by the Eighth Circuit, *Stebbins v. Stebbins*, 575 F. App'x at 705. And it appropriately considered Plaintiff's "transparent end-run around" those pre-filing restrictions: he attempted to evade a cap on his filing of actions in the Western District by "filing lawsuits in the Eastern District and waiting for them to be transferred to the Western District." (1-SER-23 (quoting *Stebbins v. Hixson*, 2018 WL 2124106, at \*3 (W.D. Ark. May 8, 2018)).)

Plaintiff's recent cases in the Northern District against Google and its affiliates continue the same trend, and were also properly considered. Judge White dismissed both *Polano* and *Rebolo* for asserting frivolous copyright infringement

44

claims targeting fair-use criticism.  (*See supra* pp. 7-9.)  And this Court affirmed the *Polano* dismissal in full.  *Polano Appeal*, Dkt. 32 at 2.

Contrary to Plaintiff's suggestion (AOB ¶¶ 100-104), the district court also properly considered Plaintiff's "motive in pursuing" his copyright cases in the Northern District.  *Molski*, 500 F.3d at 1058 (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).  Plaintiff admitted that he filed them "to stop the harassment directed against him" online (1-SER-25).  But as Judge White recognized, Plaintiff's "attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism … smacks of bad faith and abuse of the Court system." *Rebolo*, 2022 WL 2668372, at *3.

In addition to considering Plaintiff's frivolous lawsuits, the district court also reviewed cases illustrating his rampant misconduct in litigating his claims (1-SER-24, 26), including the bad-faith motion practice that drains immense party and judicial resources and forces "many hours of unnecessary review," *Dixon v. NPG Music Publ'g, LLC*, 2017 WL 2469352, at *7 (C.D. Cal. June 6, 2017).  These determinations are amply supported by the record.  In *Polano* alone, for example, Plaintiff's baseless filings included two motions for recusal, Dkt. 56 at 2, Dkt. 159 at 3; at least three motions for default judgment, *see, e.g.*, Dkts. 74, 92, 127; an improper emergency motion to preserve evidence, *see* Dkt. 145; and a motion for a protective order against Google to "cease and desist their baseless, uncorroborated

accusations of bad faith," Dkt. 179 at 1.  Such misconduct properly supported the finding of vexatiousness.  *See also, e.g.*, *Stebbins v. Stebbins,* 575 F. App'x at 705 (affirming pre-filing screening order in part because Plaintiff "filed numerous frivolous motions"); *Polano*, Dkt. 143 at 2 ("Plaintiff's improperly filed motions preempt the use of judicial resources that might otherwise be devoted to adjudicating the meritorious claims of other litigants.").

The reviewed cases also reflect Plaintiff's harassment of court staff and opposing litigants.  *See, e.g.*, *Stebbins v. Stebbins*, 2013 WL 6182991, at *3 (admonishing Plaintiff "not to yell at court staff or use abusive language in any written or oral communication with the Court or fellow litigants").  Plaintiff's abusive rhetoric has continued in this case.[11]

Finally, Plaintiff's refusal to course-correct in the face of numerous dismissals and admonishments further supported the vexatious litigant finding.  As the district court recognized (1-SER-23-24), prior to the Screening Order, Plaintiff had received **at least six** warnings from Judge White that he risked being "deem[ed] … a vexatious litigant" and "bar[red] from … filing further actions without prior approval" if he "persist[ed] in filing frivolous or meritless lawsuits," *Polano*, 2022 WL 2668371, at *5; *see also Polano*, Dkt. 134 at 1, Dkt. 143 at 1-2, Dkt. 147 at 2;

---

[11] (*See, e.g.*, 2-SER-36 (Plaintiff comparing Screening Order to "how black people were treated in the neoslavery period in US history"); AOB ¶ 48 (Plaintiff describing his critics as "untrained, undisciplined virgins in their parents' basements").)

46

*Rebolo*, 2022 WL 2668372, at *3; *Rebolo*, Dkt. 19 at 2 (similar warnings). Undeterred, Plaintiff filed the present suit—again targeting fair-use criticism—and engaged in his characteristically abusive motion practice. (*See supra* pp. 10-11, 14-15.)  Plaintiff's refusal to heed repeated judicial warnings further confirms his vexatiousness. *See, e.g.*, *Baker v. Firstcom Music*, 2021 WL 6424520, at *4 (C.D. Cal. Nov. 2, 2021) (declaring plaintiff vexatious and noting his "litigation history also shows that this Court repeatedly chastised [him] for his litigation practices").

### D. The Screening Order Is Narrowly Tailored

Finally, the Screening Order is "narrowly tailored" to Plaintiff's "wrongful behavior." *Molski*, 500 F.3d at 1061.  It applies narrowly to address Plaintiff's pattern of frivolous lawsuits in the Northern District against Google and its affiliates, his meritless copyright claims against third parties, and his abuse of the IFP privilege. (1-SER-26.)  Notably, the order "does not *prevent* [Plaintiff] from filing any … complaints, it merely subjects [Plaintiff's] complaints to an initial screening review by a district judge." *Molski*, 500 F.3d at 1061 (emphasis added).  This Court has recognized that such screening "is narrowly tailored because will not deny [the litigant] access to courts on any … claim that is not frivolous, yet it adds a valuable

47

layer of protection . . . for the courts and those targeted by [the litigant's] claims."
*Id.*

### 1. The Screening Order Appropriately Protects Google and Its Affiliates

A pre-filing order is narrowly tailored where a plaintiff has "been highly litigious with one group of defendants" and the order protects those defendants from further frivolous lawsuits. *Molski*, 500 F.3d at 1061 (citing *Moy v. United States*, 906 F.2d 467, 471 (9th Cir. 1990)). Here, the Screening Order appropriately encompasses actions filed against Google and its affiliates (1-SER-26), who Plaintiff has repeatedly targeted with frivolous lawsuits and litigation misconduct, *see* (3-SER-330-36 (Google)); *Polano*, Dkt. 11 (Alphabet); *Rebolo*, Dkt. 15 (Alphabet and YouTube); *Stebbins v. Google*, 2011 WL 5150879, at *3-4 (Google). Indeed, Plaintiff recently sought to file *another* copyright lawsuit against YouTube and a third-party user he previously sued. *See Stebbins v. Doe d/b/a Creetosis* ("*Creetosis*"), No. 4:24-mc-80179-HSG (N.D. Cal. filed June 21, 2024), Dkt. 1. Pursuant to the Screening Order, the district court reviewed the complaint and barred its filing, finding that it "repeat[ed] the same types of claims that have been repeatedly dismissed" by other courts and that it was "frivolous and meritless." *Id.*,

48

Dkt. 18 at 2. Plaintiff has again appealed. *See Stebbins v. Doe, et al.*, No. 24-4992, Dkts. 1, 3 (9th Cir. Aug. 14, 2024).

Given the extent of Plaintiff's litigation misconduct and his history of manipulating the judicial system, including his attempts to evade the pre-filing order entered against him in Arkansas, Google and its affiliates would be inadequately protected if this aspect of the Screening Order was confined to specific claims, as courts have recognized in analogous circumstances. *See, e.g.*, *Moy*, 906 F.2d at 470-71 (revising pre-filing order to apply to *any* claims against specific defendants that the plaintiff had repeatedly sued about "the same set of operative facts"); *Baker*, 2021 WL 6424520, at *5 (order narrowly tailored where it applied to *any* claims against specific defendants); *Drevaleva*, 2022 WL 15173728, at *6 (similar).

## 2. The Rest of the Screening Order Is Narrowly Tailored to Plaintiff's Misconduct

The remaining components of the Screening Order also "closely fit the specific vice[s] encountered." *Molski*, 500 F.3d at 1057 (cleaned up).

The Screening Order further applies to "copyright infringement or copyright-related claims" against other defendants (1-SER-26)—precisely the "type of claims [Plaintiff] ha[s] been filing vexatiously" in the Northern District. *Molski*, 500 F.3d at 1061. Plaintiff has filed (or attempted to file) at least *six* copyright lawsuits naming other defendants in the Northern District since 2021, some of whom have

been sued in multiple cases. (*See supra* pp. 7-10.) Given Plaintiff's documented abuse of copyright law, the screening of all such claims is appropriate.

Finally, Plaintiff must attach the Screening Order to any future IFP application explain why the action should be allowed to proceed. (1-SER-26.) That too is appropriate, given Plaintiff's prolonged "abuse of the permission granted to him to proceed as a pauper in good faith under 28 U.S.C. § 1915(d)." *Stebbins v. Stebbins*, 2013 WL 6182991, at *1 (cleaned up). Rubber-stamping Plaintiff's IFP applications no doubt enables him to file frivolous cases without paying the fees that may otherwise deter them. *See Scott v. Weinberg*, 2007 WL 963990, at *5 (W.D. Wash. Mar. 26, 2007) ("If plaintiff is 'unwilling to save [his] money and prepay filing fees, such a decision may be a good indicator of the merits of the case.'" (quoting *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999)). As the Eighth Circuit noted in 2014, Plaintiff had then already "proceeded in forma pauperis on at least sixteen complaints that proved meritless," *Stebbins v. Stebbins*, 575 F. App'x at 705, a number that has only increased in recent years, including the three IFP suits that he has filed in the Northern District against Google and its affiliates since 2021 (*see supra* pp. 7-10). Requiring the screening of Plaintiff's IFP applications before that privilege is conferred upon him is an essential deterrent.

Further, although the IFP component of the Screening Order is not limited to particular claims or defendants, that is not required or sensible here because

50

Plaintiff's IFP abuses run the gambit—for nearly fifteen years "Stebbins … ha[s] abused the privilege of proceeding in forma pauperis," *Stebbins v. Stebbins*, 575 F. App'x at 705, in lawsuits of numerous varieties against an array of defendants, ranging from confirming nonexistent arbitration awards to copyright, DMCA, defamation, and other tort claims (*see supra* pp. 5-10, 43-44).  The Screening Order appropriately accounts for Plaintiff's wide-ranging abuses.  *See Franklin v. Murphy*, 745 F.2d 1221, 1231-32 (9th Cir. 1984) (approving restriction on all future IFP actions where plaintiff's historical "abuse of the court's IFP procedure" encompassed a variety of lawsuits).

### III.    The District Court Did Not Abuse Its Discretion in Denying Leave to Amend

Under Federal Rule of Civil Procedure 15(a), the district court had discretion to deny Plaintiff's belated motion for leave to file an amended complaint based on: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (cleaned up).  Any factor may sustain denial, although certain factors warrant more weight.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Here, the court acted well within its discretion in denying Plaintiff's motion based on "undue delay, prejudice, and bad faith."  (1-SER-11.)

## A. Plaintiff Sought Amendment in Bad Faith

"The district court did not abuse its discretion in denying . . . leave to amend because the record demonstrates evidence of bad faith on behalf of [Plaintiff]." *Strojnik v. Driftwood Hosp. Mgmt., LLC*, 2022 WL 1642234, at *1 (9th Cir. May 24, 2022).

The district court aptly recognized Plaintiff's motion to amend as the latest in his series of attempts to "manipulate the judicial system" by forestalling a ruling on Google's dismissal motion. (1-SER-12.) As detailed *supra* pp. 14-15, Plaintiff had already improperly: (1) sought a preemptive protective order to "protect [him] from having to litigate" the fair use issue (2-SER-157-59, 3-SER-311); (2) tried to strike Google's dismissal motion (3-SER-250-55); and (3) filed a "partial summary judgment" motion that was "an unauthorized sur-reply" to Google's motion and again attempted to preempt its fair use defense (2-SER-160-61, 3-SER-163-68).

Having failed, Plaintiff then sought to derail Google's dismissal motion by way of *another* unauthorized sur-reply disguised as an amended complaint. The proposed complaint is suffused with arguments that Plaintiff believed "absolutely need[ed] to be considered when adjudicating the defendant's Motion to Dismiss on the grounds of 'obvious fair use.'" (2-SER-115 ¶ 4; *see, e.g.*, 2-SER-130-31 ¶¶ 70, 78, 2-SER-133-34 ¶¶ 92-93, 2-SER-140 ¶ 129 (similar)).

52

In finding bad faith, the district court properly took notice of these tactics and other instances of Plaintiff's "blatant gamesmanship." (1-SER-12 (quoting *Polano*, Dkt. 134 at 1).) In *Polano*, for example, Plaintiff voluntarily dismissed Alphabet to moot its motion to dismiss. *See Polano*, Dkt. 128 at 1. Judge White denounced Plaintiff's blatant "effort[] to manipulate the litigation process" and admonished him not to "continue to dismiss and refile cases in bad faith to obtain a different result." *Polano*, Dkt. 134 at 1. This course of conduct reasonably informed the district court's "deep[] concern[] that Plaintiff s[ought] to amend due to bad faith" here. (1-SER-12); *cf. Polano Appeal*, Dkt. 32 at 4 (affirming court's "consider[ation] of Stebbins's litigation conduct in ruling" on a motion).

Apparently seeing the writing on the wall, Plaintiff further sought to circumvent dismissal and a ruling on Google's request to declare him vexatious, by attempting to tack on new copyright infringement claims. He alleged that he posted two entirely separate copyrighted videos to YouTube in April 2021 and June 2022, and that the operator of the same Channel devoted to fair-use criticism posted clips of the videos to the Channel in April 2022 and December 2022, respectively. (2-SER-120-22 ¶¶ 15-23, 2-SER-126-27 ¶¶ 50-55.) He sought to add YouTube as a defendant (along with the "John Doe" operator of the Channel) and claimed that Google and YouTube were secondarily liable for not removing the clips. (2-SER-118-19 ¶¶ 2-3, 2-SER-127 ¶ 55.)

53

These were "not amendments in any fair sense of the word; they [were] not intended to 'save' or supplement the original claim[] whatsoever." *Vitrano v. United States*, 721 F.3d 802, 807 (7th Cir. 2013) (finding bad faith where a plaintiff sought to circumvent statutory restrictions on successive claims). They were intended to evade dismissal and potential vexatious litigant screening. Thus, although this Court has recognized that the "rule favoring liberality in amendments to pleadings is particularly important for [a] *pro se* litigant," *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (cleaned up), that liberality is not warranted in these unique circumstances, where the litigant has a documented history of manipulating the litigation process and seeks not to cure deficiencies in the original pleading but to "add new claims based on unrelated [copyrighted works] against new defendants," *Dermendziev v. Washington*, 624 F. App'x 454, 455 (9th Cir. 2015) (no abuse of discretion in denying *pro se* plaintiff leave to add new claims against new defendants based on different facts (citing *Lopez*, 203 F.3d at 1130)).

Plaintiff even goaded the district court that "there [was] nothing the Court c[ould] do to stop [him] from simply raising the other two infringement claims in a new lawsuit," and absurdly claimed that amendment would therefore "save time and judicial resources." (2-SER-116.) Such gamesmanship "smacks of bad faith and abuse of the Court system." *Rebolo*, 2022 WL 2668372, at *3.

54

## B. Plaintiff Unduly Delayed in Seeking Amendment

The district court also properly denied leave to amend because Plaintiff was "dilatory in seeking th[e] amendment." (1-SER-11.) As this Court has recognized, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Here, Plaintiff's proposed claims——based on allegedly infringing videos posted in April 2022 and December 2022—were indisputably known to Plaintiff prior to his filing the original January 2023 complaint.[12] (2-SER-120-22 ¶¶ 15-23, 2-SER-126-27 ¶¶ 50-55.) Plaintiff admits as much. (2-SER-83 (asserting his original complaint "reference[d] these two other videos").) Plaintiff also avers that he registered his videos that were the subject of the new claims with the Copyright Office in September 2021 and June 2022 (2-SER-120 ¶ 18, 2-SER-122 ¶ 23), meaning both were eligible to be included in his lawsuit before the original complaint was filed. *See* 17 U.S.C. § 411(a) (requiring "registration of the copyright" before bringing "civil action for infringement").

---

[12] The proposed complaint alleges inconsistent dates for the posting of the video clip that allegedly infringed the April 2021 livestream. The correct date appears to be April 10, 2022, based on Plaintiff's allegation that he issued a DMCA notice on that date and the clip "remained up for nearly a year … until January 2023." (2-SER-126-27 ¶¶ 50-52.)

55

There is no justification for Plaintiff failing to include his new claims in the original complaint or waiting **six months** since the latter allegedly infringing video was posted to seek amendment—well *after* Google had moved to dismiss and after Plaintiff filed his bevy of baseless motions, including for summary judgment. This Court has upheld denial of leave to amend based on shorter periods of undue delay. *See, e.g.*, *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 (9th Cir. 2023) (denial proper based on delay of five months from when the plaintiff learned of the facts underlying the proposed claim and filed a motion to amend); *Taylor v. City & Cnty. of San Francisco*, 2023 WL 3477836, at *1 (9th Cir. May 16, 2023) (same).

Plaintiff offers only the incoherent excuse that an earlier dismissal ruling in *Rebolo* purportedly barred him from including these claims in the original complaint until that order was partially vacated upon reconsideration. (AOB ¶¶ 61-63.) As an initial matter, Judge White entered the order vacating the *Rebolo* dismissal on March 28, 2023 (and Plaintiff promptly notified the district court of the decision the following day (3-SER-173-76)). Plaintiff does not and cannot explain why he waited another *four months*—until July 17, 2023—to seek leave to amend. (3-SER-347.)

Moreover, the *Rebolo* dismissal order only dealt with one of the two copyrighted videos that were the subject of Plaintiff's new claims. *See Rebolo*, 2022 WL 2668372, at *2-3 (addressing the April 18, 2021 livestream); *Rebolo*, Dkt. 15

56

¶¶ 26-27, 58, 81, 95; Dkt. 15-1 at 1.  That order did not touch on Plaintiff's June 25, 2022 livestream and thus cannot justify his failure to earlier raise any claim of its infringement.  (*See* 2-SER-121-22 ¶¶ 21-23, 2-SER-127 ¶¶ 53-55.)

In any case, the *Rebolo* dismissal ruling did not, as Plaintiff suggests, invalidate Plaintiff's copyright or declare the April 2021 livestream unprotectable. (AOB ¶¶ 63-63.)  Judge White determined only that Plaintiff was not entitled to the "presumption of validity afforded by [his] registration" of the April 2021 livestream because of Plaintiff's "prior lack of candor" in the copyright application at issue in *Polano*, and that the paucity of any other "allege[d] facts" regarding copyrightability did not "permit the Court to assess whether the content is eligible for copyright protection."  *Rebolo*, 2022 WL 2668372, at *2-3.

Plaintiff's supposed misapprehension of the *Rebolo* order and his false suggestion that it somehow "created res judicata" (AOB ¶ 63) does not withstand scrutiny and cannot excuse his lengthy delay in moving to amend, *see generally Suffrard v. Oakmont of Mariner Point, LLC*, 2018 WL 11471573, at *3 (N.D. Cal. Dec. 20, 2018) ("A mistake is not good cause[.]").

### C. The Belated Amendment Would Have Prejudiced Google

The district court also correctly found that Plaintiff's belated amendment would have prejudiced Google.  (1-SER-12.)  Plaintiff strategically waited to file the motion to amend until several months *after* Google's dismissal motion was fully

briefed.  (3-SER-177-95, 206-33, 256-87.)  Plaintiff had also needlessly forced Google to oppose his barrage of improper motions.  (*See supra* pp. 14-15.)

On this record, "it would [have] unduly prejudice [Google] to allow Plaintiff to file an amended complaint at this stage and would cause [Google] to accrue additional cost to defend against the new complaint" and whatever litany of motions would have surely accompanied the unnecessary reset in litigation.  *Steinmeyer v. Lab'y Corp. of Am. Holdings*, 2023 WL 2994115, at *2 (S.D. Cal. Apr. 17, 2023).

## IV.   Plaintiff Offers No Other Grounds for Reversal

Plaintiff raises several additional objections to the rulings below, all of which are baseless.  We address them briefly.

***Rule 60 Motion***.  The district court did not abuse its discretion in denying Plaintiff's Rule 60 motion.  (2-SER-64-78 (motion); 1-SER-2-6 (order).)

Plaintiff vaguely invoked three separate grounds for relief from the dismissal order, but none applies.  (2-SER-64 ¶¶ 1-2.)  Plaintiff did not identify any "excusable neglect" or "factual or legal mistakes" under 60(b)(1) (1-SER-5), but instead repeated the same arguments that were rejected in the dismissal order (*see, e.g.*, 2-SER-66-76 ¶¶ 14-16, 22-42, 48-70 (fair use arguments); 2-SER-76-77 ¶¶ 71-77 (vexatious litigant arguments)).  As for 60(b)(5), the dismissal was not based on Judge White's judgment in *Polano* (which has been affirmed).  (2-SER-64 ¶ 2.)  And

58

Plaintiff did not identify any "extraordinary circumstances" under Rule 60(b)(6). (1-SER-5.)

As the district court observed, Plaintiff's motion was just "further evidence that he should not have access to the Court's filing system as a vexatious litigant." (1-SER-5); *see also Polano Appeal*, Dkt. 32 at 4 (affirming denial of Plaintiff's Rule 60 motion).

***Motion For Leave to File a Motion for Reconsideration.*** Nor did the district court abuse its discretion in denying Plaintiff's reconsideration effort. (2-SER-41-42 (motion); 1-SER-2-6 (order).) Plaintiff's motion violated virtually every requirement of Local Civil Rule 7-9. It merely "incorporated by reference" Plaintiff's Rule 60 motion, which was filed before he requested leave, violating Rule 7-9(a). It primarily targeted the district court's dismissal order, which was a final order, not an interlocutory one subject to Rule 7-9. *See Ames v. Pac. W. Fin.*, 937 F.2d 611, 611 n.1 (9th Cir. 1991) ("[t]he dismissal of a complaint with prejudice" is a "final order[]."). And it violated Rule 7-9(c) by repeating prior arguments. The district court correctly recognized all of this (1-SER-5). *See also Polano Appeal*, Dkt. 32 at 4 (affirming denial of Plaintiff's motion for leave).

***Plaintiff's Surreptitious Recording.*** In Plaintiff's reply in support of his motion for leave to amend, he volunteered that he recorded his Rule 26(f) conference with Google's counsel and publicly posted it to YouTube. (2-SER-81-82 ¶¶ 11-14.)

The district court properly admonished Plaintiff for his "highly irregular and inappropriate" conduct and ordered him to delete the recording. (1-SER-7-8, 13-14, 3-SER-348.) But that issue had no bearing on the court's dismissal order (nor was Plaintiff ultimately sanctioned for it). Far from being "reversible error" (AOB ¶ 75), Plaintiff's misconduct is further illustration of why he is a vexatious litigant.

## <u>CONCLUSION</u>

This Court should affirm.

Date: September 23, 2024        Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


/s/ *Jeremy P. Auster*
Jeremy P. Auster
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
jauster@wsgr.com

*Attorneys for Defendant-Appellee*
*Google LLC*

60

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32 and Circuit Rule 32-1, the undersigned counsel for Defendant-Appellee Google LLC certifies that this brief complies with the word limit of Circuit Rule 32-1. This brief contains 13,707 words, including four words manually counted in any visual images, and excluding the items exempted by Federal Rule of Appellate Procedure 32(f). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font, in compliance with the type size and typeface requirements in Federal Rule of Appellate Procedure 32(a)(5) and (6).

Date: September 23, 2024          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


/s/ *Jeremy P. Auster*
Jeremy P. Auster
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
jauster@wsgr.com

*Attorneys for Defendant-Appellee*
*Google LLC*

61

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.  I certify that all participants in this case are registered ACMS users, and that service will be accomplished through the ACMS system.

Date: September 23, 2024      Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Jeremy P. Auster*
Jeremy P. Auster
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
jauster@wsgr.com

*Attorneys for Defendant-Appellee*
*Google LLC*