## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

David Stebbins
Appellant(s),

vs.

Google, LLC
Appellee(s).

9th Cir. Case No. 24-1936

District Court or
BAP Case No. 3:23-cv-00322-TLT

### APPELLANT'S INFORMAL REPLY BRIEF
*(attach additional sheets as necessary, up to a total of 25 pages including this form)*

**For the optional reply brief in response to appellee's answering brief(s) only.**

List each issue or argument raised in the answering brief to which you are replying. Do not repeat arguments from your opening brief or raise new arguments except in response to arguments made in the answering brief(s).

### Issue/Argument Number 1
What is the first argument in the answering brief to which you are replying?

Whether the individual infringer's actions were fair use and, if it were, whether the equitable doctrine of unclean hands should be a counter-defense to it.

What is your reply to that argument?

See attached supplemental arguments.

9th Cir. Case No. 24-1936

## **Issue/Argument Number 2**

What is the second argument in the answering brief to which you are replying?

Whether I should have been declared a vexatious litigant, and whether I should have been given leave to amend the complaint.

What is your reply to that argument?

See attached supplemental arguments.

## **Issue/Argument Number 3**

What is the third argument in the answering brief to which you are replying?

Whether I should have been made to delete the recording without being given due process of law first.

What is your reply to that argument?

See attached supplemental arguments

David Stebbins

Name

123 W. Ridge Ave.,

Apt D

Harrison, AR 72601

Address

Signature

11/6/2024

Date

## SUPPLEMENTAL REPLY ARGUMENT

1.      For the following reasons, the defendants' Answer Brief is meritless and should be rejected.

### §1: Unclean Hands is indeed applicable here.

2.      The defendants provide merely a single footnote to address my argument of unclean hands as a counter-defense to fair use. They argue that unclean hands is never applicable as a counter-defense, but only ever as an affirmative defense by the defendant. They think that for the plaintiff to raise unclean hands as a counter-defense would be about as "backwards" as a private citizen bringing criminal charges against the government.

3.      This is not the law. It is rare for unclean hands to be raised by the plaintiff to defeat an affirmative defense, but it is universally understood that it can be done in the rare event it is applicable.

    (a)     See https://www.upcounsel.com/unclean-hands ("Note that the plaintiff can also use the unclean hands defense. Specifically, the plaintiff could argue that the defendant isn't entitled to another type of defense due to his or her unclean hands").

    (b)     See also https://www.law.cornell.edu/wex/clean-hands_doctrine ("The clean-hands doctrine is invoked when a party seeking equitable relief ***or claiming a defense*** based in equity has themselves violated a duty of good faith ... in connection with the same subject matter out of which they claim a right to relief") (emphasis added).

    (c)     See also content.next.westlaw.com/practical-law/document/Id4cf197ef3ad11e28578f7ccc38dcbee/Unclean-Hands-Doctrine ("Although the unclean hands doctrine is typically an affirmative defense asserted by a defendant, it may also be asserted by a plaintiff in opposition to an equitable defense").

4.      Even in the copyright context, and even when unclean hands is being asserted specifically as a counter-defense to fair use specifically, unclean hands has been upheld by courts as a valid counter-defense to fair use in particular. In Atari Games Corp. v. Nintendo of America Inc., 975 F. 2d 832 (Fed. Cir. 1992), the

Federal Circuit used copyright misuse (a doctrine which is itself based on the concept of unclean hands), not to prevent the enforcement of a copyright, but to refuse a fair use defense. Even though it found that the use would otherwise be fair, because the defendant had misled the Copyright Office to get a copy of the program source code and therefore came to court with unclean hands, the defendant could not use the equitable fair use defense.

5.      Neither the case of Dollar Systems v. Avcar Leasing Systems nor the case of Dream Games v. PC Onsite, which the defendants cite in support of their ludicrous position that unclean hands is categorically unavailable to all plaintiffs, actually support that position. Both cases were where the defendant raised unclean hands as a defense to the plaintiff's claims, and so the prospect of it being raised by the plaintiff as a counter-defense was never even before the court in either case. As such, these two case laws are wholly inapposite to the instant case.

6.      Barring that, the issues that they actually address demonstrate precisely why the doctrine of unclean hands is indeed applicable in the instant case. In both cases, the court rejected unclean hands, not because it was categorically inapplicable, but because the allegedly unclean conduct was not sufficiently connected to the case at bar. See Dollar Systems, supra at 173 ("It is fundamental to the operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made"). See also Dream Games, supra at 990-91 ("[U]nclean hands is recognized... when the plaintiff's transgression... relates directly to the subject matter of the infringement action," and that, if the defense could be applied to *any* wrongful conduct, then "[a]rguably an infringer could defend on the ground that the work had been transported into the state in the copyright owner's truck that does not meet federal safety and pollution requirements"). Those are not radical positions. Rather, they accurately reflect the black letter law surrounding unclean hands that "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts... we should not by this doctrine create a rule comparable to that by which a careless motorist would be able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home." See Republic Molding v. BW Photo, 319 F. 2d 347, 349 (9th Cir. 1963).

7.      That, however, is also precisely why the doctrine of unclean hands is indeed applicable in the instant case, provided we accept that it can in theory be used by the plaintiff as a counter to an affirmative defense (which it can, as I've already

demonstrated). In the instant case, even the defendants admit that the individual infringer's sole objective was to harass and dox me. They call it "criticism," but they admit that it is harassment. That is not merely something the individual infringer did while also providing fair use criticism; by the defendant's own admission, the harassment was, in fact, the whole point of the use of the icon. In other words, the individual infringer (and, by proxy, the defendants) dirtied his hands (via harassment and doxxing) in acquiring the rights he now asserts (fair use). This is precisely the sort of direct relation that the doctrine of unclean hands requires.

8.      Therefore, the Court should reverse the district court's decision that unclean hands is categorically unavailable to me as plaintiff, as a procedural matter, and remand for further proceedings.

9.      That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §2: I am not suing to silence criticism. I have said this multiple times, but the defendants continue to spout this outrageous claim with zero evidence.

10.      The defendants claim that "[t]his case is Plaintiff's latest attempt to brandish copyright law to stifle criticism of him." This is infuriating. I have rebuked and disavowed this accusation countless times, and the defendants have never offered one iota of evidence in support of this outlandish accusation.

11.      I have never, literally once in my entire life, filed any lawsuit or issued any DMCA Takedown, even in part, in order to silence criticism. From day one, my entire motive has been to stop *harassment*, not criticism.

12.      In fact, when you actually stop to think about it, their accusation makes absolutely no sense. By the defendant's and district court's own admission, I have indeed been harassed to no end by the individual infringers. By the defendant's own admission, they are actively enabling this harassment, and even actively encouraging[1] it to continue. This harassment has caused me great stress, culminating in pneumonia that could have literally killed me.

---

[1]  See Greer v. Moon, 83 F. 4th 1283 (10th Cir. 2023), holding that refusing to remove illegal content posted by users, as well as publicly defending the behavior (e.g. in court briefs) is tantamount to actively encouraging the behavior.

Page 3 of 19

13.     So when the defendants insist (with zero evidence, to boot) that I am only doing this to "silence criticism," what they're actually saying is ... I don't actually care about any of that. All the harassment, all the doxxing, all the stress I've suffered that could have literally killed me? I would have been fine with all of that, as long as the criticism, and *only the criticism*, wasn't part of it.

14.     When you think about it that way, their accusation quickly becomes ludicrous on its face.

15.     Therefore, this court should reject the defendant's ludicrous assertions and even consider sanctioning them for continuing to spout the accusations in the face of countless rebukes and despite having evidence to back up their claims... unless, of course, this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §3: The icon is not transformative because there was no criticism.

16.     The defendants insist that the entire point of the icon was to criticize me. This is false. The purpose for the icon cannot possibly be to criticize me, due to the simple fact that *there was no criticism*! What the individual infringer did was not criticism, but harassment. The two are *never* one in the same. Harassment is *never* criticism, and criticism is *never* harassment.

17.     It's just like the difference between rape and consensual sex; there may be instances where consent is dubious, or where an impartial third party may be on the fence about whether there was consent, and there may be cases involving multiple bouts of sexual intercourse one after the other, with some being consensual and some being non-consensual, but there is never going to be a time when we know exactly what happened and can definitively say, with absolute confidence, that a single act of sexual intercourse was both consensual and rape at the same time.

18.     Likewise, there is no such thing as a statement that is both criticism and harassment in the same breath. Just as rape and consensual sex have a couple of superficial elements in common (namely, penile penetration), but are still so distinct from one another that it is impossible for a single act to be a hybrid of the two, so too does criticism and harassment have a few largely superficial traits in common (namely, saying negative things about a person), but are still so distinct that it is impossible for a single act to be a hybrid of the two. Think about it:

Criticism is protected under the First Amendment, but harassment is a crime in every state, so the two *have* to be distinct from one another, because it makes no sense for an act to be simultaneously illegal and constitutionally protected.

19.    In the instant case, the individual infringer's channel is entirely dedicated to harassing and doxxing me, as well as reposting entire videos with no alterations or modifications whatsoever. The icon is meant to serve as a gateway to that channel, which in turn means it is designed to facilitate the harassment and unfair copyright infringement. At a minimum, we should need discovery to determine whether it amounts to harassment or criticism, just as there would need to be a police investigation first before we can tell if a woman consented to the sex only to change her mind the next morning, or if she was indeed blackmailed into the sex.

20.    The primary difference between the two is that criticism is meant to point out shortcomings, thereby encouraging the subject to improve upon them. This can be accomplished even if the statements are given in a mean-spirited way. Harass-ment, on the other hand, "serves no legitimate purpose" other than harassment for its own sake. See § 653.2 of the California Penal Code. The defendant's attempts to pass my efforts to make a distinction off as arbitrary is entirely frivolous. This distinction is affirmed by multiple psychology experts.[2][3][4][5][6][7][8] I'm not the one making the distinction here; the distinction already exists.

21.    Barring that, the icon still fails to provide any actual criticism because the only additions to the icon are either nebulous alterations to the background that mean absolutely nothing, and the addition of less than two words[9] that collectively don't even create one whole grammatical sentence. That is not enough to be considered transformative. See Andy Warhol Foundation Visual Arts v. Goldsmith, 598 US 508 (2023) (providing mostly aesthetic, non-critical changes does not make a work transformative). See also Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443, 454-55 (9th Cir. 2020) ("[t]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the

---

2   See https://lifehacker.com/how-to-tell-the-difference-between-constructive-critici-1844498083
3   See also https://www.sor.org/getmedia/a029c580-1643-49b6-85df-477ceb58add2/constructive_criticism_or_bullying_document.pdf
4   See also https://smallbusiness.chron.com/determine-difference-between-bullying-companypolicy-37668.html
5   See also https://www.yahoo.com/news/difference-between-constructive-criticism-bullying-213412667.html
6   See also https://www.insidehighered.com/advice/2021/05/11/four-ways-determine-whencriticism-has-become-bullying-academe-opinion
7   See also https://www.job-law.com/there-are-limits-to-criticism-in-the-office/
8   See also https://www.harleytherapy.co.uk/counselling/honesty-criticism-or-verbal-abuse.htm
9   Remember that portions of the words were cropped out.

original transformative. The new expression must be accompanied by the benchmarks of transformative use") (cert denied 141 S.Ct. 2803 (2021)).

22.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §4: The use of the icon was commercial

23.     Next, the defendants insist (without providing any evidence) that the use of the icon was noncommercial. This is also false.

24.     This concept is so simple that it is infuriating that the defendants refuse to accept it. The defendants insist that the icon is noncommercial simply because "it just isn't."

25.     The icon was hosted by Google. Google is a commercial website. Therefore, Google's hosting of the icon was itself a commercial activity. This is not a difficult concept to grasp, and yet, despite the fact that I have repeatedly explained this to the defendants and the district court, nobody has yet to even address the argument in any capacity, let alone actually rebut it.

26.     To be considered "commercial" for purposes of fair use, it is not a requirement that the original author personally profit from the use. As long as someone, somewhere down in the line, makes money off of the use, it is "commercial" for purposes of fair use. See www.insidehighered.com/views/2011/08/02/myths-about-fair-use:

> "**Myth #3: Fair use is easy for an academic — I can take whatever I want because everything I do is noncommercial.**
>
> **Reality:** Working noncommercially does give you some privileges, but you'll be stuck in a gray zone if you depend on that to justify fair use. You won't be able to circulate your work in academic journals (they carry ads) or books (even nonprofit publishing houses sell their books). *Even when you contribute for free to online sites, somebody's conducting commercial activity — perhaps an advertiser placing ads on a site*, or a data miner. Noncommercial entities conduct commercial activities" (emphasis added)

27.     Therefore, because Google likely profited off the direct infringer's channel existing, the channel's existence (and, by proxy, everything in it) is commercial for purposes of fair use. Period.

28.     Therefore, the district court abused its discretion when it refused to even consider this argument, despite me putting it before the district court.

29.     Barring that, the defendants still offer no definitive proof that the individual infringer did not profit form the work in any way, shape, or form. All they offer is nothing more than an argument from incredulity, which is to say, it's not an argument at all. Furthermore, it does not address the highly improper reasoning given by the district court: That there is a presumption of lack of commerciality simply because I did not explicitly plead facts in the Complaint to allege commerciality, which, as I explained in my ¶ 10-12 of the Opening Brief, is reversible error in its own right. Appellees make no effort to even address that argument at all.

30.     Therefore, the judgment of the district court should be overturned.

31.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## §5: The original work was creative

32.     Next, the appellees insist that the original work was far from the core of copyright, but they completely ignore the district court's actual reason for declaring that the second factor weighs in favor of fair use: For no reason whatsoever. She literally just declared that the original work is "more factual than creative" simply because FU. This argument is left entirely unaddressed by the appellees.

### §5A: The original stream was opinionated and therefore creative.

33.     The District Court continues its arbitrary finding by insisting that the original work is "undoubtedly more factual than creative." No actual findings of fact were made to support this wholly arbitrary declaration. The second factor weighed in favor of fair use solely because she said so.

34.     As I pointed out in both the district court and the opening brief, highly opinionated works cause the second factor to disfavor fair use. See Cambridge

University Press v. Patton, 769 F. 3d 1232, 1270 (11th Cir. 2014) ("[W]e find that the District Court erred in holding that the second factor favored fair use … Where the excerpts of Plaintiffs' works contained evaluative, analytical, or subjectively descriptive material … or derives from the author's experiences or opinions, the District Court should have held that the second factor … weighed against fair use in cases of excerpts that were dominated by such material").

35.    The appellees completely ignore this argument. The district court acknowledged it in passing but still declared that the overall work was more factual than creative, just because, with no factual determinations whatsoever. This is an abuse of discretion and deserves reversal.

### §5B: The facial expression was highly creative.

36.    Next, the defendants summarily reject my argument that the portion the individual infringer used is what should govern the second factor of fair use. They claim that I "cite no authority" that this is the case, but this is a bald-faced lie. I did indeed cite an authority. See  Cambridge University Press, supra at 1270, holding that "excerpts that were dominated by such material" is the true focus of the second factor, not the original work as a whole.

37.    Then, the defendants simply make a blanket assertion (with no evidence whatsoever in support thereof) that this facial expression – which the individual infringer obviously used primarily because of how **_expressive_** it was – still "reflects little (if any) creativity." This is false, and the fact that the defendants spend no time at all on this point proves that _they know_ they can't produce a single argument in support of it. The highly expressive, bordering on cartoonish, nature of that face is highly expressive and highly creative, and both the appellees and the district court know it full well.

38.    Therefore, the district court's finding should be overturned.

39.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §6: The original video is unpublished under Circular 66.

40.    Next, the defendants insist that the original stream is published. Their sole

argument in support of this position is that the stream was posted on YouTube. That's it. That's all they offer to say that it's published.

41.     In making this argument, they entirely ignore the legal authority I cite to show that it is unpublished: Circular 66 from the Copyright Office, which can be read here: https://www.copyright.gov/circs/circ66.pdf. That circular explicitly states, in no uncertain terms, that simply being posted on a website, alone, does not constitute publication. See id at Page 4:

> "The fact that a work has been placed online or posted on a website does not necessarily mean that the work has been published. The Office considers a work published when copies of it are distributed to the public **by sale or other transfer of ownership** if the copyright owner authorizes the end user to **retain copies of the work.** Merely displaying or performing a work online generally does not constitute publication." (emphasis added)

42.     On Page 5, that circular also states in no uncertain terms that a "[w]ork made available only by streaming[10] ... does not constitute publication, because, as a practical matter, the end user does not retain a copy of the work when the performance ends."

43.     Furthermore, the YouTube Terms of Service (which the defendants rely on solely to argue that the work is published) expressly forbids downloading of videos. See https://www.youtube.com/t/terms ("You are not allowed to: 1. access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content"). This provides even more reason to declare that the original debate stream is unpublished. See Ciruclar 66 at Page 5:

> "*Work for which downloading or reproduction is expressly prohibited.* If there is a notice on a website in the terms of service for the site... indicating that a work or the content on the site cannot be downloaded, printed, or copied, the work or content may be deemed unpublished."

44.     The appellees rely solely on the fact that the stream was posted on their site, but unambiguous executive regulations make it abundantly clear **that's not good enough on its own**, and the totality of the circumstances clearly indicate that the

---

10  which is what happens when a video is posted to YouTube

livestream is still unpublished. Therefore, the Court should reject the appellees' already skeleton claims.

45.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## §7: The icon uses the heart of the work.

46.     Appellees argue that the icon does not use the heart of the original work, but they offer no reason whatsoever why that facial expression should not be considered the heart.

47.     They deliberately misinterpret my argument by saying that I believe the facial expression is the heart of the work solely because that was the portion the individual infringer used. That is a lie. I never said, or even implied, anything to that effect. I said that the facial expression is the heart because it is the most iconic and memorable part of work, not simply because the individual infringer chose to use it.

48.     The Defendants have not shown any proof that the facial expression is not the heart. It's not the heart simply because they say so. Furthermore, the *district court's order* (which is what this Court is supposed to actually be reviewing) is just as arbitrary as the appellees' logic: She held that it is "unreasonable to suggest" that this facial expression is the heart. However, (A) I already debunked the district court's logic (the only one whose logic matters) in ¶¶ 17-24 of the Opening Brief (which the appellees make absolutely no effort to refute), and (B) it still shouldn't have been adjudicated on a motion to dismiss in any event.

49.     Therefore, the District Court committed reversible error.

50.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## §8: Effect on the Market

51.     The defendants insist that "there is no protectable derivative market" for the icon. But they provide absolutely zero evidence in support of this blanket claim. As

the copyright holder (a status which even the defendants admit I hold), I am legally entitled to charge royalties for any use of that facial expression. Whether that picture be applied to a coffee mug, a T-Shirt, or (as the case here) an icon for a social media account, the Defendants insist that these markets do not exist. Not that the individual infringer's icon does not encroach on any of these markets (namely, the third one of those three examples I just gave), but that *there is no market* for the icon to even encroach upon, even if the individual infringer wanted to.

52.     The defendants' logic appears to be that, because the individual infringer provided less[11] than two words of alleged criticism (that was actually just harassment), then apparently that provides blanket immunity to any andall potential derivative markets. Such a concept is ludicrous on its face. They allege that there is no legally recognized derivative market for criticism, and that may be true, but that doesn't mean an icon that contains criticism (if it even is that and not just harassment) can never encroach on any other derivative markets simply because it happens to contain an iota of criticism. "The promise of copyright would be an empty one"[12] if it were that easy.

53.     Think about it this way: Imagine if an unlicensed action figure were sold in toy stores, but it had some scintilla of token criticism on its packaging and/or instruction manual, or perhaps even just two words (like in this case) of alleged criticism printed somewhere on the action figure itself, but otherwise a spitting image of the character from the TV show. Of course, the child could always simply not read that part and just play with the toy all the same, but the criticism was still *there*, however nominal. According to the defendants' theory, the mere fact that this criticism *exists* necessarily meant that this toy didn't infringe on the copyright holder's derivative market. Not just that it was still fair use despite the encroachment, but that *there is no encroachment in the first place!* That is basically what the defendants are advocating for here, and it is absurd on its face.

54.     Therefore, this Court should reject it.

55.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

---

11  Again, portions of those words were cropped out.
12  See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539  557 (1985).

## §9: I was not given proper notice of the specific grounds upon which the district court declared me vexatious.

56.    The defendants claim that I was given proper notice of the intent to declare me a vexatious litigant, simply because they filed "a" motion. They either did not read my Opening Brief or they made the conscious choice to ignore it, because I never once denied that they filed "a" motion to declare me a vexatious litigant. I said I wasn't given proper notice because the district court discarded the defendants' proffered grounds for the declaration in favor of its own grounds, and those new grounds were grounds I had never before been notified of.

57.    The mere fact that the defendant filed "a" motion does not change the fact that the specific reasoning the district court used came from nowhere. In ¶ 98 of my Opening Brief, I provide a hypothetical example in criminal court. By the defendant's logic, the mere fact that the prosecution in that hypothetical case brought "an" indictment automatically gives the hypothetical judge carte blanche to declare the defendant guilty of literally any crime he wants for any reason he wants. Such a prospect is absurd on its face and this Court should reject it.

58.    Their argument that laying out all 200+ motions that I filed which were "of little merit" was not necessary is also false. It is necessary to prevent the court from succumbing to confirmation bias, where they are subconsciously predisposed to favor factors – no matter how statistically insignificant they may be – which support their existing narrative. For example, on the issue of climate change, conservatives tend to ignore the 97% scientific consensus[13] that climate change is primarily caused by humans, instead focusing on the 3% dissenting scientists as if their word is gospel, simply because it's what they want to believe. Meanwhile, on the issue of abortion, liberals tend to ignore the 96% scientific consensus[14] that life begins at fertilization, instead siding with the measly 4% who believe life begins either at birth or upon fetal viability, simply because the latter belief supports their existing pro-choice narrative. Both political parties are guilty of this fallacious mindset on various issues.

59.    If the district court had done what I proposed, and systematically mapped

---

13  See https://www.nature.com/articles/s41562-024-01928-2 ("There is near-universal consensus (97–99.9%) in the peer-reviewed scientific literature that the climate is changing as a result of human activity").

14  See https://pubmed.ncbi.nlm.nih.gov/36629778/ ("Biologists from 1,058 academic institutions around the world assessed survey items on when a human's life begins and, overall, 96% (5337 out of 5577) affirmed the fertilization view").

out every motion I had ever filed, before crossing out all the nonfrivolous ones pursuant to the criteria set forth in ¶ 109(a)-(c) of my Opening Brief, the district court would have likely found that only about 3-4 of my past motions could truly be classified as being "of little merit," which wouldn't have been enough to justify declaring me a vexatious litigant.

60.    If the District Court had notified me of her consideration of these factors and given me my legally-entitled opportunity to refute them, I could probably have explained this to her. But then again, if the district court actually cared about my rights, it would never have come to that in the first place, since she would have thrown out the motion to declare me a vexatious litigant as soon as I refuted the grounds proffered by the appellees.

61.    Therefore, the district court's judgment should be reversed.

62.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## §10: I did not "choose" to represent myself.

63.    Next, the defendants argue that I "chose" to represent myself, and that should negate my otherwise valid right to appointed counsel in this case where I stand to lose my rights. They do not argue that this is a case that warrants it. They appear to tacitly concede that this is a case where I stand to lose my rights, which thereby triggers my Latikey right to counsel. Their only argument is that, because I "chose" to represent myself, I should lose that right.

64.    But this is a lie. I did not "choose" to represent myself. I was forced to because I can't afford a lawyer's retainer, and getting an attorney on contingency is nearly impossible unless you have a literally perfect case.

65.    They argue that it was my idea to not have a hearing. However, that is only because (A) this particular judge won't let me attend remotely (either via zoom or over the phone), and (B) I would have to attend myself because ... wait for it ... _I don't have a lawyer who can attend on my behalf!_

66.    At this point, the defendants are arguing that I don't need a lawyer because it was my idea to request an accommodation that I only needed because I don't have

a lawyer. The defendant's logic is baffling to put it mildly. What's next? Are they going to argue that a man in an auto collision case has suffered no lost wages in damages because he doesn't have a job in the first place, even though the *reason* he lost his job was because he had no means of commute *because the defendant wrecked his car?!*

67.     Therefore, the defendant's argument is frivolous and should be rejected accordingly.

68.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §11: The screening order does indeed preclude legitimate and nonfrivolous claims from being filed, as evidenced by the latest order of the district court.

69.     The defendants insist that the requirement for me to submit all future complaints to a duty judge does not preclude legitimate and nonfrivolous claims from being filed. But this is simply not true, as evidenced by the most recent duty judge order in Case 24-mc-80179-HSG in the Northern District of California. In that case, duty judge Gilliam simply declared the case frivolous for absolutely no reason. No findings of fact, no conclusions of law, no legal citations to support those conclusions of law even if they were provided, no explanation whatsoever.

70.     The closest he gets to making any finding of fact is when he says that the latest complaint "repeats the same types of claims that have been repeatedly dismissed in that order and elsewhere," but he makes absolutely no effort to explain how he came to this entirely arbitrary conclusion. If anything, the complaint only states claims that are identical in merit to those raised in Case 3:24-cv-00398-LJC (Stebbins v. Baz) in this same district: Playing 100% of my copyrighted videos while only providing nominal commentary and criticism, which is not enough to be considered fair use when you take *all four factors* into account. In that case, my claims were indeed allowed to proceed. See Dkt. 13, Page 3, Lines 14-15 in that case ("The Court finds no basis for dismissal of Stebbins's copyright infringement claims and would allow those claims to proceed").

71.     As to the libel claims, I already explained, in the miscellaneous case that Judge Gilliam arbitrarily threw out, that the libel claims in that case were different than those of the Baz case. See Dkt. 1-1, Page 2:

"As to the libel claims, I believe I have thoroughly corrected all the purported deficiencies that Judge Cisneros identified in the libel claims in the Baz case... Creetosis didn't say 'it seems' I just want to punish him for criticizing me; he said I 'certainly' just want to punish him for criticizing me. Even by Judge Cisneros's standard, that is still an assertion of cast-iron objective fact."

72.    So Judge Gilliam says that the latest complaint was "the same type of claims" that have already been dismissed? No, they aren't! They are different, and I *literally explained how* they are different! And yet, Gilliam just arbitrarily declares they are the same while giving absolutely no explanation whatsoever.

73.    This proves that the vexatious order does indeed preclude even legitimate and nonfrivolous claims. The duty judge can *just declare* my case frivolous for no reason other than "because FU," ignoring the facts, ignoring the law, ignoring *reality itself*, and my only recourse is to file an appeal and do my best to *read the judge's mind* on what exactly his reasoning was.

74.    Therefore, to protect me from this type of arbitrary behavior, the district court's order declaring me a vexatious litigant needs to be overturned.

75.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## §12: The screening order is entirely redundant of the § 1915(e) review.

76.    The screening order supposedly only enables the district court to review the complaint sua sponte. But they already have that ability. Under 18 USC § 1915(e)(2)(B), a district court can already toss out a complaint sua sponte whenever the Plaintiff is seeking to proceed in forma pauperis if it determines that the complaint is frivolous or malicious, or if the complaint fails to state a claim upon which relief can be granted. As the district court for the Southern District of West Virginia stated, "Defendants' Motion for Screening... must be denied. As Mr. Stebbins aptly notes in his response brief, the Court is already in the process of reviewing the Complaint in accordance with § 1915(e). This federal statute calls for the Court to screen complaints filed by plaintiffs who-like Mr. Stebbins in the matter sub judice-seek to proceed in forma pauperis." See Stebbins v. Moon, Civil Action 2:24-cv-140, 3 (S.D.W. Va. Apr. 15, 2024) (most citations omitted).

77.    Theoretically, this restriction on my filing privileges could conceivably enable the court to conduct such a review, even in cases where I pay a filing fee. However, Judge Thompson's order explicitly states that it only applies to cases where I'm seeking leave to proceed in forma pauperis! See Dkt. 71, Page 7, Lines 25-56 ("The Court likewise finds it appropriate that Plaintiff be subjected to a pre-screening prior to filing any future actions *in which Plaintiff seeks to proceed in forma pauperis*") (emphasis added).

78.    So really, all this vexatious litigant order does is (A) give my harassers even more ammunition to think they can get away with harassing me, and (B) gives the district court permission to simply not issue any explanation whatsoever for its arbitrary rulings, enabling them to simply declare a nonfrivolous complaint as frivolous without having to actually justify their arbitrarily rulings they know full well they cannot justify.

79.    Therefore, the order of the district court should be reversed.

80.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §13: My delay in seeking leave to amend was excusable.

81.    The Defendants argue that I was culpable in my delay in seeking leave to amend. But they offer no proof of that. As I explained, I did not seek to include the April 2021 livestream in the original complaint because it was already adjudicated as not being copyrightable by the now-vacated judgment in the Rebolo case.

82.    I already explained this in ¶¶ 7-11 of the Motion for Leave to File Amended Complaint. But the district court just ignored that and made the entirely arbitrary finding that I was incorrect in my interpretation of that order, without ever explaining why or how.

83.    Even if I was wrong (which I wasn't), the fact that I still acted in good faith in this interpretation should have been enough to excuse the delay. In most other areas of law (including federal civil procedure), delay in doing something is usually forgiven, even if the reason for the delay is objectively incorrect, as long as the party seeking the excuse has a subjective, good faith belief in his reasoning for the delay. Her failure to extend that courtesy here is yet another example of her

bias against me. Therefore, the Court should reverse her decision.

84.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §14: The Defendants have identified no legally cognizable prejudice they would suffer if leave to amend were given.

85.     The Defendants allege that they would be "prejudiced" if I were granted leave to file an amended complaint. However, the only prejudice they can articulate is that they would have to re-draft their motions to dismiss from scratch.

86.     This, however, is not recognizable at law as a sufficient prejudice. See Smith v. Santa Cruz Cnty., 21-cv-00421-EJD, 6 (N.D. Cal. May. 26, 2023) ("The ordinary cost of litigating is simply not cognizable as prejudice") (citing TCI Group Life Ins. Plan v. Knoebber, 244 F. 3d 691, 701 (9th Cir. 2001). Therefore, for the district court to accept this as prejudice without question was reversible error.

87.     That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §15: Tellingly, the appellees never argue why the amended complaint still lacks merit in its own right, which is all the more proof that the vexatious litigant order does indeed bar nonfrivolous claims.

88.     The Defendants argue a wide variety of reasons why leave to amend my complaint should not have been granted, but most of them are technicalities. They conspicuously avoid arguing the most merits-related argument of them all: That leave to amend would be futile because the claims I seek to add were frivolous in their own right.

89.     In ¶ 5 of the Motion for Leave to File Amended Complaint, I explained that there was nothing the Court could do to stop me from filing these additional claims as a separate lawsuit. In their response brief, the defendants argued that "the Court can [stop me from doing that] by declaring [me] a vexatious litigant."

90.     By making this argument, without arguing that the new claims being added

were already frivolous, they are effectively admitting to what I said in § 11 above: That, once this vexatious litigant order is in place, the district court doesn't have to actually follow the law when they throw out my cases. They are free to just arbitrarily declare my case "frivolous because I say so" and throw it out without any rhyme or reason.

91.    Therefore, this Court should reverse the decision of the district court.

92.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

### §16: The district court's complete disregard for my right to due process of law deserves reversal and sanctions.

93.    And finally, the defendants pay mere lip service to the flagrant violation of my due process rights when the district court ordered me out of nowhere to delete files without giving me even one day to prepare a response as to why I shouldn't have to do that. The defendants give only a single sentence in defense of the judgment: "The district court properly admonished Plaintiff for his 'highly irregular and inappropriate' conduct and ordered him to delete the recording." That's it. That's all they say in defense thereof. The district court's order was "proper" simply because they say it was.

94.    Therefore, the Court should reverse the district court's order and admonish the district court, acknowledging a right to record whenever said recording is not strictly in violation of California state law, and also warning the district judge that it was improper for her to issue this order without giving me even the slightest iota of due process first.

95.    That is, of course, unless this Court decides to simply affirm the district court's judgment for absolutely no reason whatsoever, and instead just call my arguments "unpersuasive" for no reason, simply because you don't like me personally.

## CONCLUSION

96.     Wherefore, premises considered, I respectfully pray that the judgment be overturned, and for any other relief to which I may be entitled.

So requested on this, the 6th day of November, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
acerthorn@yahoo.com